**Dieter CHRISTOPH and Barbara Christoph, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Civil Action No. 495–CV–88.**

United States District Court,
S.D. Georgia,
Savannah Division.

May 1, 1996.

Paul W. Painter, Jr., Painter, Ratterree, Connolly & Bart, Savannah, GA, for plaintiffs.

Brian P. Kaufman, U.S. Dept. of Justice, Washington, DC, for defendant.

## ORDER

MOORE, District Judge.

Having read and considered Plaintiff Barbara Christoph's Motion for Award of Attorney's Fees, the motion is **GRANTED IN PART** for the reasons stated below.

Mrs. Christoph timely filed this motion subsequent to this Court's determination that she and her husband Dieter Christoph were entitled to judgment as a matter of law on the issue of the deductibility of a $250,000 lump sum alimony payment made by Mr. Christoph to his ex-wife, Jutta Duse. Mrs. Christoph moved this Court to award her $11,185 (one-half of $22,370 legal bill) in attorneys' fees under the authority of 26 U.S.C. § 7430(a)(2).

In order for Mrs. Christoph to be awarded fees under § 7430(a)(2), she must show that three basic requirements have been satisfied. First, she must have exhausted all of the administrative remedies available to her within the structure of the Internal Revenue Service. 26 U.S.C. § 7430(b)(1). Next, she must show that she

is a "prevailing party"—a term of art which possesses many internal qualifiers. 26 U.S.C. § 7430(c)(4)(A). She must also show that the award she seeks equals the amount of "reasonable fees" she has "paid or incurred" in connection with the court proceeding. 26 U.S.C. § 7430(c)(1). Mrs. Christoph must establish all of the above elements in order to recover an award for attorney fees under § 7430. *Minahan v. C.I.R.*, 88 T.C. 492, 497, 1987 WL 49279 (1987).

Defendant concedes that Mrs. Christoph exhausted all her available administrative remedies. (Def.['s] Opp. to Mot. for Awd. of Atty. Fees, p. 2 n. 2.) Thus, the first requirement is satisfied. Defendant argues, however, that Mrs. Christoph failed to satisfy the next two requirements. Looking first to the third requirement as listed in § 7430(c)(1), this Court patently disagrees with Defendant's position that Mrs. Christoph has not yet paid or incurred fees. Defendant argues:

> Plaintiff Barbara Christoph has not produced any documentation that she has actually paid any attorney's fees in the present action. Further, she has not provided any proof that she, and not her husband Dieter Christoph, would "have to pay" any attorney's fee in this case. Also, based upon plaintiff Barbara Christoph's statement in her affidavit that her net worth was "less than $30,000 when this action was filed and remains less than $30,000 today," it is very unlikely that Mrs. Christoph could actually pay an attorney's fee in this case. As a result, she has not established that she has "paid or incurred" an attorney's fee in the present case and is thus not entitled to an award of such fee.

(Def.['s] Opp., p. 13.)

■ This argument is a bit too fanciful and attenuated to merit the serious consideration of this Court. While this Court agrees that it has not been shown that Mrs. Christoph has *paid* any attorney's fee, it appears abundantly clear that she has *incurred* an attorney's fee even though she incurred it in concert with her husband. To "incur" means "to meet or fall in with (as an inconvenience);

become liable or subject to; bring down upon oneself." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE, UNABRIDGED, 1971. The documentation produced in this case satisfies this Court that Mrs. Christoph has rendered herself liable and subject to payment of attorney's fees for the services rendered in this case. Thus, Mrs. Christoph and Mr. Christoph have incurred a legal and contractual obligation to pay their attorneys' fees. If, for example, Mr. Christoph were to somehow escape his responsibility to pay those fees by moving to a small island off the coast of Bolivia, then Mrs. Christoph would remain responsible for their payment. She has incurred a debt to her attorneys; Defendant has not adequately refuted that fact.

■ A more difficult question is raised regarding Mrs. Christoph's status as a "prevailing party" under 26 U.S.C. § 7430(c)(4)(A). To satisfy the "prevailing party" requirement, three sub-requirements must be met. First, the Court must find that the "position of the United States in the proceeding was not substantially justified." 26 U.S.C. § 7430(c)(4)(A)(i). Second, the Court must find that Mrs. Christoph "substantially prevailed" as to the amount or matter in controversy. 26 U.S.C. § 7430(c)(4)(A)(ii). Finally, the Court must find that Mrs. Christoph's net worth did not exceed $2,000,000 at the time this civil action was filed. 26 U.S.C. § 7430(c)(4)(A)(iii) (citing 28 U.S.C. § 2412(d)(2)(B)).

■ By winning this case, along with her husband, on the Motion for Summary Judgment, Mrs. Christoph substantially prevailed as to the amount or matter in controversy; she has satisfied the § 7430(c)(4)(A)(ii) requirement. Regarding the lack of substantial justification criterion of § 7430(c)(4)(A)(i), this Court indeed has serious questions and reservations concerning whether or not the position of the government was "substantially justified." An IRS "position that is 'substantially justified' is one that is 'justified to a degree that could satisfy a reasonable person.' or that has a 'reasonable basis both in law and fact.'" *In re Rasbury*, 24 F.3d 159, 168 (11th Cir.1994) (quoting *Pierce v. Underwood*, 487 U.S. 552,

565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988)); *see also Estate of Johnson v. C.I.R.,* 985 F.2d 1315, 1318 (5th Cir.1993). While the law pertaining to the $250,000 lump sum deductibility may have been a bit murky, this Court cannot conclude that the actions of the Internal Revenue Service were justified in light of the facts of this case: namely, that it knowingly and intentionally tried to effect a double recovery from Mr. Christoph and Ms. Duse. Such an action constitutes sheer opportunism and cannot, in the opinion of the Court, amount to substantial justification; taxpayers have a clear right to more civilized and responsible conduct from public officials, *including* tax collectors.

■ Despite all of the above findings favorable to Mrs. Christoph, this Court was a bit reluctant to grant her request for legal fees because it had doubts regarding whether she satisfied the net worth requirement. Mrs. Christoph has submitted an affidavit averring that she has no liabilities and that her assets amount to less than $30,000. Defendant asserts that this affidavit is insufficient to prove the amount of her net worth for purposes of § 7430. (Def.['s] Opp., pp. 11–12 (citing *Kirkpatrick v. C.I.R.,* 64 T.C.M. (CCH) 277, 1992 WL 174246 (1992); *Dixson Int'l Service Corp. v. C.I.R.,* 94 T.C. 708, 1990 WL 64041 (1990); *Doyle v. C.I.R.,* 56 T.C.M. (CCH) 260, 1988 WL 95990 (1988)).) Mrs. Christoph has subsequently submitted a balance sheet which clearly shows that her liabilities are $0 but that her assets are well below $30,000. The affidavit and the balance sheet are sufficient to establish that her net worth falls below the $2,000,000 threshold. *See Prager v. C.I.R.,* 68 T.C.M. (CCH) 524, 1994 WL 454630 (1994).

It is uncontested that Mr. Christoph's net worth exceeds $2,000,000 and that Mr. Christoph and Mrs. Christoph filed a joint tax return in 1989 which later became the subject matter of this civil action. The question before this Court then is whether it should consider Mrs. Christoph's net worth independently of Mr. Christoph's or whether, because they filed a joint tax return, the net worths of Mr. Christoph and Mrs. Christoph are to be considered as one combined net worth of the constructive individual created by the filing of the joint tax return.

Mrs. Christoph cites one case which, standing alone, would seem to indicate that this Court should rule in her favor on the net worth issue. In *Hong v. C.I.R.,* the Tax Court ruled that the net worths of married petitioners are to be considered independently:

> [T]he language of 28 U.S.C. § 2412(d)(2)(B)(i) refers to "an individual", not to "the plaintiffs", "the petitioners", or "the complainants". The words refer to separate individuals, not to the marital community. We find nothing ambiguous in the statutory language and accordingly feel controlled by the clear language. Neither do we find that our interpretation of the statute arrives at a result that is absurd or futile. Lastly, there is nothing in the legislative history of [26 U.S.C.] § 7430 or 28 U.S.C. § 2412 which leads us to conclude that our result is an unreasonable one at variance with the policy of the legislation. In fact, the legislative history of the latter statute confirms that "an individual whose net worth did not exceed $2,000,000 at the time the adjudication was initiated" meets the requirement. The legislative history adds: "As used in this section the term 'individual' means a natural person." H.Rept. 99–120 (Part I), at 14 (1985). *We accordingly look to the net worth of each individual petitioner.*

100 T.C. 88, 91, 1993 WL 27493 (1993) (emphasis added). Defendant has offered three cases, only one of which was reported in hardcopy format, to counter the *Hong* court's reasoning. *See Sierra Club v. United States Army Corps of Engineers,* 590 F.Supp. 1509 (S.D.N.Y.1984); *Sneller v. United States,* 1993 WL 109769 (Bankr.M.D.Ala.1993); *Papson v. United States,* 1982 WL 11261 (Ct.Cl. 1992). This Court does not find any of these cases as clearly reasoned and straight-forward as the *Hong* decision which, relying upon Congressional intent, finds that the legal term "individual" actually matches the lay meaning of the term: an "individual" is *one* natural person.

Defendant has cited to 26 C.F.R. § 301.7430–5(f) which states, for purposes of

attorney's fees, "individuals filing a joint return shall be treated as 1 taxpayer...." Defendant essentially argues that this treasury regulation, adopted in June 1994, emasculates the *Hong* court ruling. This Court cannot agree. Defendant, in referring to the language quoted at the beginning of this paragraph, fails to mention that this regulation, on its face, applies only to administrative proceedings and not judicial proceedings such as that which has been conducted in this Court. If an agency of the executive branch desires to regulate how it will administer attorney fee awards in cases which are disposed of at the administrative level then it is free to do so. That same regulation, however, does not serve to trump the *Hong* court ruling which applied to attorney fee awards in judicial proceedings. If an administrative agency could simply adopt regulations which would serve to override judicial decisions, then the independence and integrity of the third branch of government would be greatly undermined.

This reading of the application of 26 C.F.R. § 301.7430–5(f) is supported by the *Prager* court's decision. That opinion, issued after the adoption of the treasury regulation, followed the *Hong* court's understanding of "individual" and did not even cite to the treasury regulation. *Prager*, 68 T.C.M. at 524. As a result, this Court follows the approach of the *Hong* and *Prager* decisions and rules that Mrs. Christoph has satisfied the net worth requirement of 26 U.S.C. § 7430(c)(4)(A)(iii) and 28 U.S.C. § 2412(d)(2)(B). In having so ruled, this Court determines that Mrs. Christoph has satisfied all the requirements and subrequirements of § 7430. This, however, does not mean that she is entitled to all the attorneys' fees which she seeks.

Defendant explicitly concedes that the amount of time Attorney Paul Painter and Attorney Robert Stansfield spent in this case was reasonable. (Def.['s] Opp., p. 16 n. 8.) Therefore, this Court must determine what the reasonable rates for both attorneys were. Section 7430(a) of the Internal Revenue Code

permits an award of "reasonable litigation costs" which include

> reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding, except that such fees shall not be in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such a proceeding, justified a higher rate.

26 U.S.C. § 7430(c)(1)(B)(iii).

Looking first to Attorney Stansfield, this Court examines Mrs. Christoph's generic suggestion that the $100 per hour rate the attorney charged should be assessed as the reasonable and allowable fee. This Court takes note that the $75 per hour rate, established in 1986 in § 7430, should be adjusted to provide for an increase in the cost of living. This Court has received from the Department of Health and Human Services, Assistant Secretary for Management and Budget, a table showing the changes in the Consumer Price Index ("CPI") over the last thirty-eight years. (See Appendix.) Using the CPI figures indicated in that table, this Court finds that the standard rates allowable under § 7430 are as follows:

| YEAR | CPI | INCREASE | NEW RATE |
| --- | --- | --- | --- |
| 1986 | — | — | $ 75.00 |
| 1987 | 4.4% | $3.30 | $ 78.30 |
| 1988 | 4.4% | $3.45 | $ 81.75 |
| 1989 | 4.6% | $3.76 | $ 85.51 |
| 1990 | 6.1% | $5.22 | $ 90.73 |
| 1991 | 3.1% | $2.81 | $ 93.54 |
| 1992 | 2.9% | $2.71 | $ 96.25 |
| 1993 | 2.7% | $2.60 | $ 98.85 |
| 1994 | 2.7% | $2.67 | $101.52 |
| 1995 | 2.5% | $2.54 | $104.06 |
| 1996 | 2.5%[1] | $2.60 | $106.66 |

Attorney Stansfield's $100 per hour rate never exceeded the statutory cap as adjusted for inflation. Therefore, his rate will be computed at the hourly rate which he actually billed the Christoph file. In 1994, Attorney Stansfield performed 3.3 hours of work on this case. Therefore, the allowable

---

1. Because the 1996 CPI has not yet been calculated, this Court will use the latest CPI figure (that from 1995) to determine the 1996 rate increase.

fee for Attorney Stansfield in 1994 was 3.3 × $100.00 = $330.00. In 1995, Attorney Stansfield performed 19.1 hours of work on this case. Therefore, the allowable fee for Attorney Stansfield in 1995 was 19.1 × $100.00 = $1,910.00. He performed no work on the case in 1996. The total allowable fee for Attorney Stansfield's 22.4 hours of work amounts to $330.00 + $1,910.00 = $2,240.00.

■ Attorney Painter has suggested that his allowable rate should be $150 per hour and, in support of that figure, has offered the affidavit of Arnold Young, a senior partner specializing in litigation at the Savannah firm of Hunter, Maclean, Exley & Dunn. Mr. Young avers that "Mr. Painter's services for handling of a case of this type have a bare minimum value of $150 per hour." Mr. Young has not himself handled tax refund cases such as this but is familiar with attorneys who have. He states: "It is my opinion ... that the market rate for handling such cases is a bare minimum of $150 per hour for lawyers with Mr. Painter's degree of skill, experience and reputation. My opinion is that a more appropriate fee for Mr. Painter in a complex civil matter in United States District Court would be about $200 per hour." This affidavit, however, stands only to buttress Attorney Painter's reputation in the legal community. It does not show him to be a tax specialist which would require an upward adjustment of the allowable fee.

In *Pierce v. Underwood,* the Supreme Court considered the "special factors" adjustment for an attorney fee award against the government. 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). The Court considered the main "special factors" adjustment: the limited availability for qualified attorneys. *Id.* at 572, 108 S.Ct. at 2553–54. The *Pierce* ruling essentially eliminated the rate analysis which Attorney Painter has set forth—that of the prevailing market rate. *Id.*

If "the limited availability of qualified attorneys for the proceedings involved" meant merely that lawyers skilled and experienced enough to try the case are in short supply, it would effectively eliminate the $75 cap—since the "prevailing market rate for the kind and quality of the services furnished" are obviously *determined* by the relative supply of that kind and quality of services. "Limited availability" so interpreted would not be a "special factor," but a factor virtually always present when services with a market rate of more than $75 have been provided. We do not think that Congress meant that if the rates for all lawyers in the relevant city—or even in the entire country—come to exceed $75 per hour (adjusted for inflation), then that market minimum rate will govern instead of the statutory cap. To the contrary, the "special factor" formulation suggests Congress thought that $75 an hour was generally quite enough public reimbursement for lawyers' fees, *whatever the local or national market might be.* If that is to be so, *the exception for "limited availability of qualified attorneys for the proceedings involved" must refer to attorneys "qualified for the proceedings" in some specialized sense, rather than just in their general legal competence.* We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language. Where such qualifications are necessary and can be obtained only at rates in excess of the $75 cap, reimbursement above that limit is allowed.

*Id.* at 571–72, 108 S.Ct. at 2553–54 (emphases added) (footnote omitted). interpreting the import of this case, the Eleventh Circuit has stated: "The Court's view is clear: a mere short supply of qualified lawyers willing to take a case for $75 per hour or less does not mean that there is a 'limited availability of qualified counsel.'" *Jean v. Nelson,* 863 F.2d 759, 774 (11th Cir.1988), *aff'd sub nom. Commissioner, I.N.S. v. Jean,* 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990).

While it is clear that Attorney Painter is indeed a well regarded and highly experienced litigator in the federal and state courts of southern Georgia, this does not mean that he is a tax specialist for purposes of the

statutory attorney fee award. The affidavits adduced do not show that Attorney Painter has an LL.M. in taxation or that he is a certified specialist in that field. Therefore, under *Pierce,* his rate is statutorily capped at the rate set forth in the table on page 1571, *supra.* In 1994, Attorney Painter performed 17.9 hours of work on this case. Attorney Painter's allowable fee for 1994 was 17.9 × $101.52 = $1,871.21. In 1995, Attorney Painter performed 83.2 hours on this case. Attorney Painter's allowable fee for 1995 was 83.2 × $104.06 = $8,657.79. In 1996, Attorney Painter performed 33.1 hours on this case. Attorney Painter's allowable fee for 1996 was 33.1 × $106.66 = $3,530.45. The total allowable fee for Attorney Painter's 134.2 hours of work is $1,871.21 + $8,657.79 + $3,530.45 = $14,059.45.

The total allowable fee for both Attorney Stansfield and Attorney Painter is $2,240.00 + $14,059.45 = $16,299.45.

▮ It is clear, however, that Mrs. Christoph is not entitled to the total allowable fee since both she and her husband were clients of Attorney Painter and Attorney Stansfield. There is really no system of calculation which this Court can employ to fix the attorney's fee award. Both the *Prager* and *Hong* decisions stop short of fixing a rate by which the attorney fee determination can be made when a co-plaintiff spouse files a motion for award of attorney's fee individually. Mrs. Christoph has suggested that the Court simply divide the allowable fee into two halves and award her one half in attorney fees. This the Court will not do. It is clear to anyone familiar with this case that this case is, in blood and treasure, Mr. Christoph's battle with the Internal Revenue Service.[2] This Court, however, recognizes that Mrs. Christoph is, in some sense, connected to the subject matter of the controversy, if only tangentially, and had an interest in seeing this litigation through to a successful conclusion. This interest amounts to no more than one-half of a one-half interest and so Mrs. Christoph is entitled to 25% of the allowable attorney fees in this case. Therefore, pursuant to 26 U.S.C. § 7430, the total attorney fee award which Defendant must pay to Mrs. Christoph amounts to $16,299.45 × 25% = $4,074.86.

SO ORDERED.

# Appendix

# Consumer Price Index Table
Source: Department of Health and Human Services

[2]. Indeed, this Court is somewhat puzzled that Congress has not yet amended the net worth requirement to prevent a wife of a millionaire from recovering attorney's fee but, as has been stated above, this Court will neither critically reexamine nor dilute the Congressional intent as discussed in the *Hong* and *Prager* decisions.

TABLE B-59 —Changes in special consumer price indexes, 1958-95

[For all urban consumers; percent change]

| Year or month | All items (CPI-U) | | All items less food | | All items less energy | | All items less food and energy | | All items less medical care | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Dec to Dec [1] | Year to year | Dec to Dec [1] | Year to year | Dec to Dec.[1] | Year to year | Dec to Dec [1] | Year to year | Dec to Dec.[1] | Year to year |
| 1958 | 1 8 | 2 8 | 1 8 | 2 1 | 2 1 | 2 8 | 1 7 | 2 4 | 1 7 | 2 8 |
| 1959 | 1 7 | 7 | 2 1 | 2 1 | 1 3 | 7 | 2 0 | 2 0 | 1 4 | 1 0 |
| 1960 | 1 4 | 1 7 | 1 0 | 1 7 | 1.3 | 1 7 | 1.0 | 1 3 | 1 3 | 1 3 |
| 1961 | 7 | 1 0 | 1 3 | 1 0 | .7 | 1 0 | 1 3 | 1 3 | 3 | 1 0 |
| 1962 | 1 3 | 1 0 | 1 0 | 1 0 | 1 3 | 1 3 | 1 3 | 1 3 | 1 3 | 1 0 |
| 1963 | 1 6 | 1 3 | 1 6 | 1 3 | 1 9 | 1 3 | 1 6 | 1 3 | 1 6 | 1 0 |
| 1964 | 1 0 | 1 3 | 1 0 | 1 3 | 1 3 | 1 6 | 1.2 | 1.6 | 1 0 | 1 3 |
| 1965 | 1 9 | 1 6 | 1 6 | 1 6 | 1 9 | 1 6 | 1 5 | 1 2 | 1 9 | 1 6 |
| 1966 | 3 5 | 2 9 | 3 5 | 2 2 | 3.4 | 3 1 | 3 J | 2 4 | 3 4 | 3 1 |
| 1967 | 3 0 | 3 1 | 3 3 | 3 4 | 3 2 | 2 7 | 3 8 | 3 6 | 2 7 | 2 1 |
| 1968 | 4 7 | 4 2 | 5 0 | 4 5 | 4 9 | 4 4 | 5 1 | 4 6 | 4 7 | 4 2 |
| 1969 | 6 2 | 5 5 | 5 6 | 5 4 | 6.5 | 5 8 | 6 2 | 5.8 | 6 1 | 5 4 |
| 1970 | 5 6 | 5 7 | 6 6 | 6 0 | 5 4 | 6 1 | 6.6 | 6 3 | 5 2 | 5 9 |
| 1971 | 3 3 | 4 4 | 3 0 | 4 6 | 3.4 | 4 2 | 3 1 | 4 7 | 3.2 | 4 1 |
| 1972 | 3 4 | 3 2 | 2 9 | 2 9 | 3 5 | 3 3 | 3 0 | 3 0 | 3 4 | 3 2 |
| 1973 | 8 7 | 6 2 | 5 6 | 4 0 | 8 2 | 6.2 | 4 7 | 3 6 | 9.1 | 6.4 |
| 1974 | 12 3 | 11 0 | 12 2 | 9 8 | 11 7 | 9 8 | 11 1 | 8 3 | 12 2 | 11 2 |
| 1975 | 6 9 | 9 1 | 7 3 | 9 4 | 6 6 | 8 9 | 6 7 | 9 1 | 6 7 | 9 0 |
| 1976 | 4 9 | 5 8 | 6 1 | 6 7 | 4 8 | 5 6 | 6.1 | 6 5 | 4 5 | 5 3 |
| 1977 | 6 7 | 6 5 | 6 4 | 6.4 | 6 7 | 6.4 | 6 5 | 6 3 | 6.7 | 6 3 |
| 1978 | 9 0 | 7 6 | 8 3 | 7 2 | 9.1 | 7 8 | 8 5 | 7 4 | 9 1 | 7 6 |
| 1979 | 13 3 | 11 3 | 14 0 | 11.4 | 11 1 | 10.0 | 11 3 | 9 8 | 13 4 | 11.5 |
| 1980 | 12 5 | 13 5 | 13 0 | 14 5 | 11 7 | 11 6 | 12 2 | 12 4 | 12 5 | 13 6 |
| 1981 | 8 9 | 10 3 | 9.8 | 10 9 | 8 5 | 10 0 | 9 5 | 10 4 | 8 8 | 10 4 |
| 1982 | 3 8 | 6 2 | 4 1 | 6 5 | 4 2 | 6 7 | 4 5 | 7 4 | 3 6 | 5 9 |
| 1983 | 3 8 | 3 2 | 4 1 | 3.5 | 4 5 | 3.6 | 4 8 | 4 0 | 3 6 | 2 9 |
| 1984 | 3 9 | 4 3 | 3 9 | 4.3 | 4 4 | 4 7 | 4 7 | 5.0 | 3 9 | 4 1 |
| 1985 | 3 8 | 3 6 | 4 1 | 3 8 | 4 0 | 3 9 | 4 3 | 4 3 | 3 5 | 3 4 |
| 1986 | 1.1 | 1 9 | 5 | 1 7 | 3.8 | 3 9 | 3 8 | 4 0 | 7 | 1 5 |
| 1987 | 4 4 | 3 6 | 4 6 | 3 5 | 4.1 | 4 1 | 4.2 | 4.1 | 4 3 | 3 5 |
| 1988 | 4 4 | 4 1 | 4 2 | 4 1 | 4 7 | 4 4 | 4 7 | 4 4 | 4 2 | 3 9 |
| 1989 | 4 6 | 4 8 | 4 5 | 4 6 | 4.6 | 4 7 | 4 4 | 4 5 | 4 5 | 4.6 |
| 1990 | 6 1 | 5 4 | 6 3 | 5 3 | 5 2 | 5 2 | 5.2 | 5 0 | 5.9 | 5 2 |
| 1991 | 3 1 | 4 2 | 3 3 | 4.5 | 3 9 | 4 6 | 4 4 | 4 9 | 2 7 | 3 9 |
| 1992 | 2 9 | 3.0 | 3 2 | 3 5 | 3 0 | 3 2 | 3.3 | 3 7 | 2 7 | 2 8 |
| 1993 | 2.7 | 3 0 | 2 7 | 3 1 | 3 1 | 3.2 | 3.2 | 3 3 | 2 6 | 2 7 |
| 1994 | 2 7 | 2 6 | 2 6 | 2.7 | 2 6 | 2.7 | 2 6 | 2 8 | 2 5 | 2 5 |
| 1995 | 2 5 | 2 8 | 2 7 | 2 8 | 2 9 | 3.0 | 3 0 | 3 0 | 2 5 | 2.7 |

Percent change from preceding period

| | Unadjusted | Seasonally adjusted | Unadjusted | Seasonally adjusted | Unadjusted | Seasonally adjusted | Unadjusted | Seasonally adjusted | Unadjusted | Seasonally adjusted |
|---|---|---|---|---|---|---|---|---|---|---|
| 1994 Jan | 0 3 | 0.1 | 0 1 | 0.1 | 0.3 | 0 1 | 0.3 | 0.2 | 0.2 | 0 1 |
| Feb | 3 | 3 | 5 | 3 | 3 | .2 | 5 | 2 | 3 | 2 |
| Mar | 3 | 2 | 5 | 3 | 5 | .3 | 5 | 3 | 4 | 3 |
| Apr | 1 | 2 | 1 | 1 | 1 | .3 | 1 | 2 | 1 | 1 |
| May | 1 | 1 | 1 | 2 | 1 | .3 | 1 | 3 | 1 | 1 |
| June | 3 | 3 | 3 | 3 | 1 | 3 | 1 | 3 | 3 | 3 |
| July | 3 | 3 | .2 | 3 | 2 | 3 | 1 | 2 | 2 | 3 |
| Aug | 4 | .4 | 5 | 3 | 4 | 3 | 4 | 3 | 5 | .3 |
| Sept | 3 | 2 | .3 | 2 | 3 | 2 | 3 | 2 | 2 | 1 |
| Oct | 1 | 1 | 1 | 1 | 3 | 2 | 3 | 2 | 1 | 1 |
| Nov | 1 | 1 | 1 | 2 | 1 | 1 | 1 | 2 | 1 | 1 |
| Dec | 0 | 2 | -3 | 1 | 0 | 3 | -2 | 1 | -1 | 2 |
| 1995 Jan | 4 | 3 | 4 | 4 | .5 | 3 | 5 | 4 | 4 | 3 |
| Feb | 4 | .3 | 5 | 3 | 4 | 3 | 6 | 3 | 3 | 3 |
| Mar | 3 | 2 | 4 | 3 | 4 | .3 | 5 | 4 | 3 | 2 |
| Apr | 3 | 4 | 3 | .3 | 3 | .4 | .2 | 4 | 3 | 4 |
| May | 2 | 3 | 3 | .3 | 0 | .2 | 1 | 2 | 2 | 2 |
| June | 2 | 1 | 3 | 2 | 0 | 2 | 1 | 2 | 2 | 2 |
| July | 0 | 2 | 1 | 1 | .1 | 2 | 1 | 2 | 0 | 1 |
| Aug | 3 | 1 | 2 | 1 | 3 | 2 | 3 | 2 | 2 | .1 |
| Sept | 2 | 1 | 2 | .1 | 3 | 3 | 3 | 2 | 3 | .1 |
| Oct | 3 | 3 | .3 | .3 | 4 | .3 | 4 | 3 | 3 | 3 |
| Nov | -1 | 0 | 0 | 0 | .1 | 1 | 1 | .1 | -1 | 0 |
| Dec | -1 | 2 | -1 | 3 | -1 | .1 | .2 | 1 | -1 | 2 |