T.C. Memo. 1996-468


UNITED STATES TAX COURT


BETTY W. THOMPSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18922-93.                    Filed October 17,1996.


<u>David D. Aughtry</u> and <u>Donald P. Lancaster</u>, for petitioner.

<u>Julie M. T. Foster</u>, for respondent.


MEMORANDUM OPINION

DAWSON, <u>Judge</u>:  This case was assigned to Special Trial
Judge John F. Dean pursuant to section 7443A(b)(4) and Rules 180,
181 and 183.[1]  The Court agrees with and adopts the Special Trial
Judge's opinion which is set forth below.

--------

[1]Unless otherwise specified, all section references are to
the Internal Revenue Code, as amended.  All Rule references are
to the Tax Court Rules of Practice and Procedure.

OPINION OF THE SPECIAL TRIAL JUDGE

DEAN, Special Trial Judge:  This matter is before the Court on petitioner's Motion for Litigation and Administrative Costs pursuant to section 7430 and Rule 231.

In separate notices of deficiency addressed to Betty W. Thompson (hereinafter petitioner) and her husband, Lawrence N. Thompson (hereinafter Mr. Thompson), respondent determined a deficiency in and an addition to the Federal gift tax liability of each of them as follows:

| Calendar Year Ended | Deficiency | Addition to Tax Sec. 6660 |
|---|---|---|
| 12/31/88 | $398,683.08 | $119,605 |

The adjustment in the respective notices of deficiency was primarily attributable to respondent's determination that the value of gifts of common stock made in the year 1988 was $3,163,500, instead of $1,260,072 as reported on the gift tax return signed by petitioner and Mr. Thompson.[2]

The petition in this case was filed on September 1, 1993. On November 5, 1993, the Court issued its notice setting petitioner's case and Mr. Thompson's case for trial at the April 11, 1994, trial calendar in Atlanta, Georgia.  Within the period allowed by Rule 143(f), petitioner and Mr. Thompson submitted an expert witness report on the valuation of the

---

[2]The notices also determined that there were taxable gifts from prior periods in the amount of $27,575.33 and not "$0.00" as reported on the return.

closely held stock which was the subject of respondent's deficiency notices. Shortly before trial, respondent accepted the valuation contained in the expert witness report. A stipulation of settled issues and a revised stipulation of settled issues were filed with the Court in May and August of 1994, respectively.[3]

Concurrently with the filing of the stipulation of settled issues, petitioner filed her motion for litigation and administrative costs. Respondent filed a response to petitioner's motion, and petitioner filed a reply to respondent's response to petitioner's motion. Also, since the filing of the motion and responses, the parties have stipulated additional facts and petitioner has filed an additional affidavit[4].

Neither party initially requested a hearing in this matter. Respondent eventually requested a hearing on the element of petitioner's payment of legal fees, but the Court concludes that a hearing is not necessary for the proper consideration and disposition of this motion. Rule 232(a).

---

[3]The parties have agreed that there is a deficiency in gift tax due from petitioner for the taxable year 1988 in the amount of $24,942 and that there is no addition to tax due from petitioner for the taxable year 1988 under the provisions of sec. 6660.

[4]Petitioner supplied an additional affidavit attesting to the attorney's fees that she allegedly paid or incurred.

The Court decides the motion for litigation and administrative costs based upon the pleadings, petitioner's motion with attached exhibits, respondent's response with attached exhibits, petitioner's reply to respondent's response with attached exhibits, the parties' stipulations, and petitioner's additional affidavit. The relevant facts as drawn from the record are set out below.

## Background

Petitioner and Mr. Thompson resided at Milledgeville, Georgia, at the time the petition in this case was filed. Mr. Thompson is the chief executive of and principal shareholder in T & S Hardwoods, Inc. (the Company). The Company is a closely held family corporation located in Milledgeville, Georgia. The Company is engaged in the operation of hardwood sawmills.

On August 8, 1988, Mr. Thompson made gifts of stock in the Company to his son and two daughters.[5] On April 18, 1989, the Internal Revenue Service received a Form 709, United States Gift and Generation-Skipping Transfer Tax Return, signed by L. N. Thompson, Jr., as donor. Petitioner also signed the return indicating her consent to "split-gift" treatment under section

---

[5]Petitioner and Mr. Thompson had given "split gifts" of stock in the Company to their children in the years 1986 and 1987 that reduced the amount of unified credit available for application to the tax on the gifts made in 1988. See sec. 2505(a). This issue has been settled by agreement of the parties.

2513.[6] On a schedule attached to the return, gifts of 9,000 shares of the Company to Lawrence N. Thompson III, 1,050 shares to Barbara E. Thompson, and 1,050 shares to Ann W. Jefferson were reported. All of the shares were valued at $113.52 per share, and the valuation was supported by the computations of James M. Grant, C.P.A. (hereinafter Mr. Grant), the return preparer.

Mr. Grant valued the Company stock by capitalizing the 1984-88 yearly average net profit per share at 15 percent, and comparing the resulting figure of $189.80 to the book value per share as of August 31, 1988, which was $159.48. After finding the average of the two figures, $174.64, Mr. Grant then deducted a discount of 35 percent for lack of marketability and the transfer of a minority interest. The deduction for the discount of $61.12, from the average of $174.64, resulted in the reported valuation of $113.52 per share.

Both gift tax returns were selected for examination by respondent. On August 1, 1991, Mr. Thompson and his accountant, Mr. Grant, met with respondent's examining agent at the Company's facilities in Milledgeville, Georgia. Respondent's examining agent, an estate and gift tax attorney, was primarily interested in discussing with Mr. Thompson and Mr. Grant the level of the

---

[6]Part I, line 16 of Mr. Thompson's Form 709 was marked with an "X" in the "yes" column indicating that his spouse, petitioner, intended to file a separate gift tax return for the calendar year. The parties have stipulated that petitioner, in fact, filed a Form 709 reporting the subject gifts.

discount taken in determining the value of the Company's shares when the 1986, 1987, and 1988 gifts were made to the Thompson children.

Respondent's examining agent made his own computation of the value of the Company stock. The agent, using what he considered to be a comparable publicly traded corporation, determined in his report that the hypothetical market value of the Company on the valuation date was $300 per share. He then discounted that value by 20 percent, or $60 per share, to reflect the lack of marketability of closely held stock. To the discounted value of $240 he applied a "control"[7] premium of 20 percent, or $48, which he added to the marketability discounted value of $240 to arrive at a figure of $288 per share. Finally, he rounded to the amount of $285 as his proposed per-share value of the Company stock to a hypothetical buyer.

In August of 1991, Mr. Thompson engaged attorney J. René Hawkins (hereinafter Mr. Hawkins). In connection with representing Mr. Thompson in the examination of the gift tax return, Mr. Hawkins suggested that Mr. Thompson hire an independent appraiser to value the shares that Mr. Thompson had given to the children. Based upon this advice, Mr. Thompson hired John O. Batson (hereinafter Mr. Batson) to perform an appraisal of the Company stock.

---

[7]"Control" here represents ownership of more than 50 percent of the stock of a corporation by a single family.

Mr. Batson prepared an appraisal report and submitted it to the Company. Mr. Batson's fee was paid by the Company and charged as compensation to Mr. Thompson. It was Mr. Thompson's understanding that both Mr. Batson and Mr. Hawkins, although formally engaged by him, were also representing his wife, here petitioner, with respect to her potential gift tax liability.

In due course, petitioner and Mr. Thompson received the revenue agent's report and filed a protest. In May of 1992, Mr. Hawkins, by letter, submitted the appraisal prepared by Mr. Batson to the Appeals Office.

On or about August 11, 1993, statutory notices were issued to petitioner and Mr. Thompson determining gift tax deficiencies and additions to tax under section 6660 based on respondent's valuation of the Company stock.

The petition was filed on September 1, 1993. Upon the filing of respondent's answer on November 1, 1993, the case was at issue. A Notice Setting Case for Trial, dated November 5, 1993, set the case for trial on April 11, 1994, and the Standing Pre-Trial Order directed the parties to file expert witness reports no later than 30 days prior to the first day of the trial session.

On or about February 16, 1994, Mr. Thompson hired attorney David Aughtry (hereinafter Mr. Aughtry) to represent Mr. Thompson and petitioner at trial. A valuation expert, Z. Christopher Mercer (hereinafter Mr. Mercer), of Mercer Capital Management,

Inc., was in turn engaged by Mr. Aughtry to prepare an appraisal of the shares of the Company for use in the gift tax valuation cases of Mr. Thompson and petitioner.

Mr. Mercer prepared an appraisal report and submitted it to Mr. Thompson. Mr. Mercer's fee was paid by the Company and charged as compensation to Mr. Thompson.[8] Although Mr. Aughtry and Mr. Mercer were formally engaged by Mr. Thompson, it was understood that they would also represent petitioner's interests in her separate gift tax case. Mr. Aughtry entered his appearance in petitioner's case on March 15, 1994.

Petitioner provided a copy of the valuation report prepared by Mr. Mercer to respondent within the time required under Rule 143(f). Respondent, on the record at a hearing in Atlanta, Georgia, on April 22, 1994, accepted the per-share value of the Company stock as determined by Mr. Mercer, $124.50 for the year 1988, and lesser values for gifts in the 2 previous years. Respondent also conceded on the record that the addition to tax under section 6660 would not apply. It was agreed that the settlement would apply to both petitioner's and Mr. Thompson's case. Since Mr. Thompson had a net worth in excess of $2 million, he did not file a motion for fees and costs in his case.

---

[8]The Company advanced other litigation costs and charged them as compensation to Mr. Thompson.

The Court ordered the parties to meet and attempt to prepare a stipulation of agreed facts "relevant to the issue of petitioner `paying' or `incurring' the costs claimed in petitioner's motion".  In response thereto, petitioner filed an affidavit with the Court.  The affidavit, sworn "to the best of her knowledge and belief" on January 30, 1995, states in paragraph 5 that petitioner has "incurred and paid" fees and costs in the amount of $67,371.

On April 3, 1995, the Court, once again, ordered the parties to file a stipulation of facts "regarding whether petitioner `paid' or `incurred' the litigation and administrative costs" at issue.  On May 2, 1995, the parties filed a stipulation of facts. Attached to the stipulation, as Joint Exhibit 7-G, is a copy of a check drawn by petitioner to her husband in the amount of $67,371, dated February 1, 1995.

Petitioner is not employed, and although she receives occasional dividend income, most of her income and assets have come from Mr. Thompson directly or indirectly.

## Discussion

Section 7430(a) provides that, in the case of any administrative or court proceedings brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty, the "prevailing party" may be awarded a judgment for reasonable administrative costs incurred in connection with any administrative proceedings

within the IRS, and reasonable litigation costs incurred in connection with any court proceeding. To qualify as a prevailing party under the statute, petitioner must establish that: (1) The position of the United States in the proceeding was not substantially justified; (2) she substantially prevailed with respect to the amount in controversy or with respect to the most significant issue presented; and (3) she met the net worth requirements of 28 U.S.C. sec. 2412(d)(2)(B) (1994) on the date the petition was filed. Sec. 7430(c)(4)(A).

To recover litigation costs, petitioner must also establish that she exhausted the administrative remedies available to her within the Internal Revenue Service and that she did not unreasonably protract the proceedings. Sec. 7430(b)(1), (4). Petitioner bears the burden of proof with respect to each of the preceding requirements. Rule 232(e).

Petitioner's motion in this case seeks litigation and administrative costs paid or incurred beginning with the examination of the returns of petitioner and of Mr. Thompson on which the split gifts were reported through the filing of petitioner's reply to respondent's response to petitioner's motion for litigation and administrative costs.

Respondent agrees in her response to petitioner's motion for litigation and administrative costs that petitioner has substantially prevailed with regard to the amount in controversy, and that petitioner meets the net worth requirement.

For the reasons stated below, we find it unnecessary to address the issues of whether the position of respondent was substantially justified in this matter, whether petitioner exhausted administrative remedies, and whether petitioner unreasonably protracted the Court and administrative proceedings.

Petitioner Must Pay or Incur Fees and Costs

Upon examination of the record in this case, we conclude that petitioner has not carried her burden of proving that she has paid or incurred any costs in connection with these administrative or judicial proceedings as required by statute and the Rules of this Court. Sec. 7430(a)(1) and (2) (reasonable litigation and administrative costs "incurred"); Rule 231(d) (reasonable litigation and administrative costs "paid or incurred").

In Hong v. Commissioner, 100 T.C. 88 (1993), a husband and wife filed a joint Federal income tax return, were issued a joint statutory notice, filed a joint petition, and had a combined net worth greater than $2 million, but less than $2 million each. This Court held that each petitioner met the net worth requirements of 28 U.S.C. sec. 2412(d)(2)(B) (1994), incorporated into section 7430(c)(4)(A)(iii). The latter section, we said, speaks in terms of an individual. However, an individual must demonstrate that he or she has incurred or paid the costs and fees for which an award is sought. See Prager v. Commissioner, T.C. Memo. 1994-420; cf. Hong v. Commissioner, supra at 92 n.2.

As an initial matter we note that, like section 7430, the Equal Access to Justice Act (EAJA), codified at 5 U.S.C. section 504 and 28 U.S.C. section 2412 (1994), allows courts to award attorney's fees and other expenses to a prevailing party in actions against the Government. At times we will draw on the more extensive case law under the EAJA in order to interpret an analogous provision in section 7430. Kenagy v. Unites States, 942 F.2d 459 (8th Cir. 1991) (where wording is consistent, courts read the EAJA and sec. 7430 in harmony); United States v. Balanced Fin. Management, Inc., 769 F.2d 1440, 1451 n.12 (10th Cir. 1985); Powell v. Commissioner, 91 T.C. 673, 682 (1988), revd. on another issue 891 F.2d 1167 (5th Cir. 1990).

Meaning of "Paid or Incurred"

By virtue of its requirement that attorney's fees have been "incurred" by the party, section 7430 differs from some other fee-shifting statutes. For example, unlike the Civil Rights Attorneys Fees Awards Act of 1976, which provides for allowance of "a reasonable attorney's fee as part of the costs", section 7430 is more narrowly drawn and requires that to receive an award, attorney's fees must have been paid or incurred. Frisch v. Commissioner, 87 T.C. 838, 846 (1986). This is an important distinction. To be eligible for an award of fees under section 7430, petitioner must be able to show that she has paid those

fees or incurred an obligation to pay them.  Id. at 845-846 (plain language of section 7430 indicates that recovery is limited to actual expenditures).[9]

The Court has observed that the meaning of "incurred" in the context of section 7430 is "'to become liable or subject to: bring down upon oneself.'"  Id. at 846.  In analogous circumstances, it has been held that fees are incurred when there is a legal obligation to pay them.  United States v. 122.00 Acres of Land, 856 F.2d 56 (8th Cir. 1988) (applying sec. 304(a)(2) of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. sec. 4654(a); fees must be "actually incurred"); accord SEC v. Comserv Corp., 908 F.2d 1407, 1414 (8th Cir. 1990) (construing the EAJA to a similar effect).

The fact that petitioner here may have "retained" and was represented by attorneys and other professionals in the administrative and judicial proceedings is not sufficient to meet the requirements of section 7430.  See, e.g., Unification Church v. INS, 762 F.2d 1077, 1082-1083, 1092 (D.C. Cir. 1985)

---

[9]There is a well-recognized exception (not pertinent here) to this requirement in proceedings under the EAJA.  In light of the legislative history of the Act and for reasons of public policy, parties who are represented by a legal services organization or by an attorney pro bono are not precluded from an award of fees and costs under the EAJA.  Awards are routinely made in those circumstances even though the claiming party did not pay or incur fees.  See, e.g., Phillips v. GSA, 924 F.2d 1577, 1582-1583 (Fed. Cir. 1991); SEC v. Comserv Corp., 908 F.2d 1407, 1415 (8th Cir. 1990); American Association of Retired Persons v. EEOC, 873 F.2d 402, 406 (D.C. Cir. 1989); Watford v. Heckler, 765 F.2d 1562, 1567 n.6 (11th Cir. 1985).

(individual plaintiffs "retained" attorney and received representation, but payment was made by another, the Unification Church).

Payment of Fees and Costs

The issues involved in the gift tax deficiency cases of petitioner and her husband were identical.  The primary question to be answered was, on the valuation date, what was the value of stock in the Company given as split gifts by Mr. Thompson and petitioner to their children.  Both petitioner and her husband were represented by the same legal counsel.  Under these circumstances, close scrutiny of the record before us is warranted to determine what fee arrangement in fact existed.  See American Association of Retired Persons v. EEOC, 873 F.2d 402, 405-406 (D.C. Cir. 1989) (concern about evasion of party eligibility requirements is highest where one counsel represents more than one party, especially where the wealth of one or more of those parties would likely cause disqualification from recovering fees).

Mr. Thompson engaged Mr. Hawkins and hired Mr. Batson.  The Company, of which Mr. Thompson is chairman and principal shareholder, paid Mr. Batson's fee, and the payment was charged as compensation to Mr. Thompson.

The evidence further shows that Mr. Thompson hired Mr. Aughtry, who, in turn, hired Mr. Mercer, the valuation expert who represented petitioner and Mr. Thompson after the filing of the

petition in this case. Mr. Mercer's fee was paid by the Company and the payment charged as compensation to Mr. Thompson. Moreover, the company advanced other litigation costs in an unspecified amount and charged them as compensation to Mr. Thompson. The only evidence in this record that petitioner paid any of the fees and costs in this case is her February 1, 1995, check to Mr. Thompson in the amount of $67,371 that bears the notation "Reimburse Legal Exp." As demonstrated by the date, February 1, 1995, the check was written after the Court's order requesting stipulated facts concerning whether petitioner had paid or incurred fees and costs. We also note that the check is dated 2 days after the sworn affidavit dated January 30, 1995, in which petitioner stated that, to the best of her knowledge and belief, she had incurred and "paid" attorney's fees and costs of $67,371.

The date of petitioner's check is not its only questionable characteristic. Petitioner submitted a summary of assets as of the end of the year 1993 attached to her affidavit of May 19, 1994. An examination of the summary of assets fails to reveal any apparent source of liquid funds[10] from which petitioner could write a check for $67,371 to Mr. Thompson. Since petitioner is not employed and most of her assets have come from Mr. Thompson, we are reluctant to place much weight on her check to him as

---

[10]Petitioner has not stated that she converted any of her other assets into cash.

evidence that she has "paid" the subject fees and costs. On the contrary, the "reimbursement" check written by petitioner to Mr. Thompson is additional evidence that he is the person who paid the fees and costs in this case.

The conduct of petitioner and Mr. Thompson strongly suggests that it was never intended that petitioner would incur or pay any fees in this matter. In our judgment the timing of the "reimbursement" check and petitioner's lack of liquid funds strongly suggest an attempt by petitioner and her husband to circumvent the net worth requirement for a section 7430 award, rather than her bona fide payment of an obligation. We must look to the substance of what occurred. Allowance of a fee award to petitioner would effectively allow her to recover costs incurred by Mr. Thompson, an ineligible litigant, who actually absorbed the financial burden of the litigation.

In addition, we need not address petitioner's arguments sounding in contract, including quantum meruit, at any length. Suffice it to say that payment to a creditor discharges a debtor's obligation. See Ga. Code Ann. sec. 13-4-40 (Michie 1982). Unlike Christoph v. United States, 931 F. Supp. 1564 (S.D. Ga. 1996), payments of all the litigation costs here at issue were made by the company and charged as compensation to Mr. Thompson.

Based on the record before us, we hold that petitioner has failed to carry her burden of showing that she paid or incurred,

within the meaning of section 7430, any fee or cost[11] identified in her motion.

    To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.

---

[11]We have considered whether petitioner has paid any miscellaneous administrative or litigation cost.  In an attempt to determine whether petitioner is entitled to recover the fee for filing her petition, we discovered that petitioner's petition and that of her husband, Mr. Thompson, were sent to the Court by Federal Express in a single envelope.  The receipt attached to the envelope indicates the sender to be Mr. Hawkins.  The "internal billing reference" is listed as "L. N. Thompson, Jr." Also, the parties have stipulated that in addition to the fees of Mr. Batson and Mr. Mercer, "T & S Hardwoods, Inc. advanced other [unspecified] litigation costs and charged them as income to Mr. Thompson".