**L. Ray WOOD, Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

**No. 86–1041.**

United States Court of Appeals,
Fifth Circuit.

Jan. 23, 1987.

O. Jan Tyler, Dallas, Tex., for plaintiff-appellant.

Matthew J. Anderton, Roger M. Olsen, Acting Asst. Atty. Gen., Michael L. Paup, Chief Appellate Section, Richard Farber, U.S. Dept. of Justice, Tax Div., Washington, D.C., for defendant-appellee.

Before CLARK, Chief Judge, WISDOM, and HIGGINBOTHAM, Circuit Judges.

CLARK, Chief Judge:

The Internal Revenue Service assessed L. Ray Wood with $39,355.38 in unpaid withholding tax liabilities of Red Ant Prod-

ucts, Inc. for the second, third, and fourth quarters of 1979 and the first quarter of 1980. The IRS alleged that, as to Red Ant, Wood was a "responsible person" who willfully failed to pay the taxes, and thus was liable under 26 U.S.C. § 6672. Wood paid $6806.17 toward satisfaction of the assessment and filed suit for a refund. The IRS counterclaimed for the remaining amount due. The district court held in favor of the IRS, and Wood appeals. We affirm the judgment appealed from.

### I.

Red Ant was organized in 1978 by Wood, Don AltGilbers, Alfred Wood (Wood's brother), and several other employees of Airline Equipment and Service Co., Inc., a corporation controlled by Wood. Red Ant manufactured seat bases and frames for recreational vehicles, a line of business the company acquired from Airline. Red Ant issued 25,000 shares of common stock at $1.00 per share to the organizers other than Wood. Instead of common stock, Wood received a $30,000 debenture convertible into one share of Red Ant common stock for each dollar of principal and accrued interest on the date of conversion. Wood was chairman of the board; several company documents also listed him as chief executive officer. AltGilbers was president of Red Ant and the parties stipulated that he controlled the everyday operation of the company. Wood, AltGilbers, and Alfred Wood were the only persons authorized to sign checks on Red Ant's checking accounts. Until June 18, 1979, AltGilbers issued and signed all of Red Ant's checks.

At the time of incorporation the organizers had high hopes for Red Ant. Those hopes collided in early 1979 with high gasoline prices and lines at the gas pumps. Red Ant's sales fell as buyers turned away from recreational vehicles because of their low gas mileage. The company began to suffer from poor cash flow. In response it slowed production and ceased replacing workers as they left the company. It also began failing to make required deposits of employment taxes. For the second and third quarters of 1979 Red Ant deposited amounts less than its total Federal Insurance Contributions Act (FICA) employers' tax liability. The IRS applied these amounts deposited for social security solely to the employers' tax liability leaving the entire liability for withholding taxes outstanding. For the fourth quarter of 1979 Red Ant's deposits exceeded its employers' tax liability. The IRS extinguished the entire employers' tax liability and applied the excess against the withholding tax liability for the quarter. Red Ant made no deposits in the first quarter of 1980.

Meanwhile, the company's financial difficulties led to other problems. On June 18, 1979 Red Ant's bank informed Wood that AltGilbers was engaging in checking and deposit practices which it claimed improperly inflated the company's balances. As a result, Wood took over signing the company's checks from AltGilbers, although AltGilbers continued to determine which creditors to pay. After other alleged improprieties, AltGilbers resigned from Red Ant on September 7, 1979. Wood then took over every day control of Red Ant. Sometime in late September, Wood received a request from the IRS for payment of Red Ant's employment tax liability for the second quarter of 1979. The request for payment was dated September 17, 1979. AltGilbers signed the employment tax return for that quarter, although Wood signed the returns for the other quarters at issue. Wood did not respond to the request for payment. He signed payroll checks in amounts that would have more than covered Red Ant's withholding tax liabilities after receiving notice that employment taxes were unpaid. Red Ant ceased operation in February 1980.

The IRS assessed Wood with the unpaid withholding tax liabilities of Red Ant. Wood's partial payment and this suit for refund ensued. The IRS counterclaimed for the remaining balance. The district court after a bench trial held for the IRS. It concluded that Wood was a responsible person not only as of June 18, 1979 when he started signing Red Ant's checks but

also before that date. In addition, it found that, after receiving notice that employment taxes were unpaid, Wood acted willfully in making payments to creditors in amounts that would have extinguished Red Ant's withholding tax liabilities. Wood appeals.

## II.

### A.

■ The Internal Revenue Code requires employers to withhold from employees' wages the amounts owed by each employee for federal income taxes and the employees' share of FICA taxes. 26 U.S.C. §§ 3402, 3102. The withheld funds are held in trust by the employer for the United States. *Id.* § 7501(a); *Howard v. United States,* 711 F.2d 729, 733 (5th Cir.1983). Employees are considered to have paid the taxes to the United States even if their employer does not remit the funds to the government. *Id.* Employers are also required to pay employers' FICA tax in an amount that matches the employees' FICA tax. 26 U.S.C. § 3111.

To account for these taxes an employer must file a quarterly employment tax return by the end of the month following the quarter for which the return is made. 26 C.F.R. §§ 31.6011(a)–1(a)(1), .6011(a)–4(a)(1) & .6071(a)–1(a)(1) (1986). If the amount of undeposited taxes exceeds $200, the employer must deposit the taxes owed by the due date of the return. *Id.* § 31.6302(c)–1(a)(1)(iv). In addition, if the undeposited employment taxes at the end of a quarter-monthly period (roughly a week)[1] exceed $2000, the employer must deposit the taxes within three banking days of the end of the quarter-monthly period. *Id.* § 31.6302(c)–1(a)(1)(ii)(b). If the amount of the undeposited employment taxes at the end of any month, except the final month of the quar-

ter, exceeds $200, the employer is required to deposit the taxes within 15 days after the end of the month unless the employer made a deposit at the end of a quarter-monthly period during the month.[2] *Id.* § 31.6302(c)–1(a)(1)(ii)(a). The IRS regulations describe the procedure to be followed in making a deposit, which includes the use of a Federal Tax Deposit form. *Id.* § 31.-6302(c)–1(a)(2).

■ Individuals are not liable for undeposited employers' FICA taxes. *Muntwyler v. United States,* 703 F.2d 1030, 1032 (7th Cir.1983). But individuals may be liable for the unpaid withholding taxes under 26 U.S.C. § 6672(a), which provides as follows:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

This section thus imposes two requirements for liability: the person must be a "responsible person" and the person must act "willfully" in not paying the taxes. *Brown v. United States,* 591 F.2d 1136, 1139–40 (5th Cir.1979). We review findings by the district court that Wood met these requirements under a clearly erroneous standard. Fed.R.Civ.P. 52(a); *see Brown,* 591 F.2d at 1140; *Neckles v. United States,* 579 F.2d 938, 940 (5th Cir.1978) (per curiam).

---

**1.** *See* 26 C.F.R. § 31.6302(c)–1(a)(ii) (1986) (defining "quarter-monthly period" as "the first 7 days of a calendar month, the 8th day through the 15th day of a calendar month, the 16th day through the 22nd day of a calendar month, or the portion of a calendar month following the 22nd day of such month").

**2.** The dollar amounts used as cutoffs are applicable to return periods that end after December 31, 1970 and before January 1, 1981; different dollar amounts apply to later periods. 26 C.F.R. § 31.6302(c)–1(a)(i), (iv) (1986).

### B.

Wood concedes that he was a responsible person beginning on September 7, 1979, when he took over day-to-day management of Red Ant from AltGilbers. He argues, however, that he was not a responsible person before that date because AltGilbers determined which creditors would be paid. Both Wood and his brother Alfred Wood testified at trial that Wood was not responsible for ensuring that taxes were paid. Wood urges that because the district court found both his and his brother's testimony credible, the court's conclusion that he was a responsible person is clearly erroneous. Wood relies on *Godfrey v. United States*, 748 F.2d 1568 (Fed.Cir.1984), which held that merely being an active chairman of the board is not a sufficient basis for liability. *Id.* at 1576.

Responsibility is a matter of status, duty, and authority. *Howard v. United States*, 711 F.2d 729, 734 (5th Cir.1983). This circuit generally takes a broad view of who qualifies as a responsible person. *Commonwealth National Bank v. United States*, 665 F.2d 743, 751 (5th Cir.1982). The record supports the district court's conclusion that Wood had "the status, duty and authority to pay the taxes owed" for all the quarters at issue. *Howard*, 711 F.2d at 734. He had a substantial financial interest in Red Ant through the debenture, which was convertible at his option into sufficient shares of stock to give him a controlling interest in the company. As chairman of the board he took an active role in the decisions made by the board. Several corporate documents also refer to him as chief executive officer of Red Ant. He was one of only three persons authorized to sign the company's checks, and only one signature was required to negotiate a check. The fact that, with no change in authority, Wood took over the signing of checks after June 18 and ran day-to-day operations after September 7 demonstrate the broad authority he had before those dates.

Wood's reliance on *Godfrey* is misplaced. *Godfrey* is clearly distinguishable from the present case because Godfrey was an outside director of a publicly-held corporation who did not own a significant proportion of the company's stock and who did not have authority to sign the company's checks. 748 F.2d at 1576. Wood's articulation of the legal conclusion that he was not responsible for paying taxes does not preclude the district court from reaching a contrary conclusion. Finally, the fact that AltGilbers ran the day-to-day operations of Red Ant does not absolve Wood from liability. *See Mazo v. United States*, 591 F.2d 1151, 1155–56 (5th Cir.), *cert. denied*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979); *Liddon v. United States*, 448 F.2d 509, 512–13 (5th Cir.1971), *cert. denied*, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972). The district court's finding that Wood was a responsible person was not clearly erroneous.

### C.

A responsible person is liable under section 6672 only if he or she "willfully" fails to ensure that withholding taxes are paid. Willfulness requires merely a voluntary, conscious, and intentional act; a bad motive or evil intent is not necessary. *Mazo v. United States*, 591 F.2d 1151, 1154 (5th Cir.), *cert. denied*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979). A considered decision not to pay the taxes owed, evidenced by payments to other creditors with knowledge that withholding taxes are due, establishes willfulness. *Howard v. United States*, 711 F.2d 729, 736 (5th Cir. 1983). A responsible person also acts willfully by proceeding with a "reckless disregard of a known or obvious risk that trust funds may not be remitted to the government." *Brown v. United States*, 591 F.2d 1136, 1140 (5th Cir.1979).

Wood argues that he did not willfully fail to pay the withholding taxes for which Red Ant was liable before September 7. He relies on *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978), in which the United States Supreme Court held that a respon-

sible person does not act willfully in paying other creditors when the tax liability accrued prior to the person's becoming a responsible person. *Id.* at 259–60, 98 S.Ct. at 1791. Because the district court correctly found that Wood was a responsible person both before and after the obligations at issue accrued, *Slodov* is not applicable. *Mazo,* 591 F.2d at 1154. Wood received notice that employment taxes were past due by a letter from the IRS dated September 17, 1979. He concedes that after that date he signed checks paying to creditors more than the amount of unpaid withholding taxes. Thus, he acted willfully as to all taxes unpaid before he received notice that second quarter employment taxes were past due.

For dates after he received notice of unpaid employment taxes Wood does not dispute that he is liable for the amount of any withholding tax deposits that Red Ant failed to make. He contends, however, that he is not liable for the amounts of deposits that Red Ant did make. He relies on three theories. First, Wood argues that the IRS ignored express directions on the IRS form accompanying the deposits when it applied the deposits to Red Ant's FICA employers' tax obligations (for which Wood would not be liable) before applying the deposits to Red Ant's withholding tax obligations (for which Wood could be liable). Second, Wood claims that the IRS ignored directions on the check stubs accompanying the checks when it applied the deposits. Third, Wood maintains that because Red Ant did make several of the quarter-monthly deposits he could not have willfully failed to make those deposits.

■ It is well established that in the absence of a direction by the taxpayer the IRS can apply a payment to any outstanding tax liability of the taxpayer. *National Bank of the Commonwealth v. Mechanics' National Bank,* 94 U.S. 437, 439, 4 Otto 437, 439, 24 L.Ed. 176 (1877); *Liddon v. United States,* 448 F.2d 509, 513 (5th Cir. 1971), *cert. denied,* 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972). The IRS has announced its intention to follow this prac-

tice in applying employment tax deposits. *See* Rev.Rul. 79–284, 1979–2 C.B. 83. This circuit has approved the application of corporate funds to FICA employers' tax liabilities before applying the funds to withholding taxes in the absence of a direction by the taxpayer. *Liddon,* 448 F.2d at 513. But if a taxpayer directs that a payment be applied in a certain manner, the IRS must abide by the taxpayer's direction. *Muntwyler v. United States,* 703 F.2d 1030, 1032 (7th Cir.1983).

■ Wood's first two theories are attempts to show that he directed the IRS to apply the deposits in a certain way. First, Wood focuses on the heading of Form 941–501, which must accompany every employment tax deposit. 26 C.F.R. § 31.6302(c)–1(a)(2)(ii) (1986). The card reads: "Federal Tax Deposit of Withheld Income and FICA for Tax Quarter Ending ___." Wood argues that the adjective "withheld" modifies both income and FICA. Thus, he contends, the heading on the card directs the IRS to apply the deposit solely to the withholding taxes and not to the employers' FICA tax liability. This argument is not persuasive. The employers' FICA tax is also a FICA tax. *Anderson v. United States,* 497 F.Supp. 563, 565 (E.D.Wisc.1980). Indeed, the employers' FICA and the employees' FICA taxes are grouped under one heading on the employment tax return (Form 941) that Red Ant filled out. "Withheld" modifies only income; therefore the card did not direct the IRS to apply the deposit solely to withholding taxes. Moreover, since the IRS chose the wording of the heading of the card and Wood had no choice but to use the form, we decline to construe the heading to be a direction by Wood as to how the funds should be applied.

■ Second, Wood argues that the notations on Red Ant check stubs accompanying the checks served as a direction to the IRS. Those notations could be read to reflect the company's FICA employers' tax, FICA employees' tax, and withheld income tax for the period covered by the check. Wood contends that the IRS should have applied the deposits to each of the respec-

tive taxes in the amounts indicated on the check stub. This argument also is without merit. Wood presented no evidence at trial showing that the supposed direction on the check stub ever reached the IRS. Indeed, his attorney agreed at trial that the check stubs likely never left the bank. The notations on the check stubs could be construed as serving Red Ant's internal record keeping. They were too ambiguous and uncertain to serve as directions to the IRS. The district court's finding that Wood made no specific designation is not clearly erroneous. Thus, the court correctly held that IRS could apply the deposits to the employers' FICA taxes before applying them to the withholding taxes. *See Liddon,* 448 F.2d at 513.

Wood's third theory is that he did not act willfully as to those deposits made by Red Ant. He argues that because the deposit system established by the IRS must be used to pay employment taxes, *see Cindy's, Inc. v. United States,* 740 F.2d 851, 852 (11th Cir.1984), and because IRS regulations provide that amounts deposited "shall be considered as payment of the tax," 26 C.F.R. § 1.6302–1(b) (1986), he did exactly what the law required and did not willfully fail to make those deposits. He finds further support in *Brown,* in which the court held that a responsible person acted willfully by failing to make the withholding deposits. 591 F.2d at 1141. Wood reasons that if failure to make required deposits constitutes willfulness, then making the deposits should demonstrate a lack of willfulness.

Wood places a hypertechnical construction on part of the duties imposed on employers by IRS regulations. Employers do have a duty to make deposits during a quarter, and when they make those deposits they must use the depository system. But that duty is not the employer's sole duty. The employer also has a duty to pay the remaining taxes due by the last day of the month following the end of the quarter. 26 C.F.R. § 31.6302(c)–1(a)(1)(iv) (1986). Indeed, the amounts deposited throughout the quarter are not considered paid until the date the remaining balance is due. *Id.*

§ 31.6302(c)–1(a)(2)(iii). While an employer may act willfully by not making deposits during the quarter, *Brown,* 591 F.2d at 1141, it is specious to syllogize that making deposits negates willfulness. The court in *Brown* implicitly recognized this when it stated that "Treasury regulations require withheld funds to be deposited during the quarter and do not *merely* impose a duty to pay them at the end of the period." *Id.* (emphasis added). Wood's reasoning ignores the duty to pay at the end of the quarter.

Because Red Ant did not pay the balance of employment taxes due at the end of the quarter, Wood did not do all the law required of him. His disregard for the obvious risk that the IRS would apply the deposits to the FICA employers' tax rather than the withholding taxes is sufficient to establish willfulness for the amounts deposited by Red Ant. For the same reason, Wood did not demonstrate reasonable cause for his failure to pay. *See Newsome v. United States,* 431 F.2d 742, 746–48 (5th Cir.1970).

The district court's finding of willfulness was not clearly erroneous. Wood was properly held liable for all the withholding taxes due. The judgment appealed from is

AFFIRMED.