T.C. Memo. 2012-164

UNITED STATES TAX COURT

KAREN L. COOLEY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8639-09L.                    Filed June 11, 2012.

<u>Joe Alfred Izen, Jr.</u>, for petitioner.

<u>Susan Kathy Greene</u>, for respondent.

MEMORANDUM OPINION

HOLMES, <u>Judge</u>:  In 2008 the Commissioner told Karen Cooley he intended

to levy on her property to collect approximately $2,000 in unpaid tax for 2006.  It all

turned out to be a misunderstanding caused by Ms. Cooley's putting the wrong

Social Security number on a quarterly payment voucher, which led the IRS to

miscredit the check accompanying the voucher. The Commissioner's lawyer quickly fixed the mistake when Ms. Cooley produced a copy of the check.

But Ms. Cooley didn't just want the levy stopped. She moved for attorney's fees and costs of more than $30,000 that she claimed her attorney--a frequent advocate before us named Joe Alfred Izen, Jr.--had racked up in representing her. Ms. Cooley's 2006 tax return (which the Commissioner had attached to his objection to the motion) stated that she was choosing married-filing-separately status. On the first page of that return, she listed her husband's name as "Joe A. Izen, Jr." It also turns out that Ms. Cooley works as a legal assistant for Mr. Izen's firm, and some of the expenses were for time billed by a legal assistant.

This suggested the need for a closer look.

## Background

Ms. Cooley married Mr. Izen in 1991. A little over a year later, they signed a postnuptial agreement which they recorded in Harris County, Texas. (Ms. Cooley resided in Houston when she entered into the agreement and still resided there when she filed her petition.) The agreement specifies that any income earned after the date of the agreement would be the separate property of the spouse earning the income. The agreement also gives each spouse "sole and exclusive management, control, and disposition of [his or her] separate property" and "the right to sell,

mortgage, or otherwise deal with his or her separate property without consulting the other spouse." Since entering into the postnuptial agreement, Ms. Cooley has filed separate income tax returns.

Ms. Cooley works as a legal assistant for Mr. Izen's law firm, apparently with the status of independent contractor--and she reported most of her income on the Schedule C, Profit or Loss From Business, that she attached to her return. When she filed her 2006 tax return she selected "married filing separately" status and reported income of approximately $44,000. She also reported total payments that exceeded her total tax.

The Commissioner assessed the tax Ms. Cooley reported. But IRS records showed total payments less than Ms. Cooley reported, so he sent her a notice informing her that he had made a change to her return and she now owed approximately $2,000.

Ms. Cooley didn't pay, and the Commissioner sent her a notice of balance due. According to her motion papers, it was not long after this that Ms. Cooley decided to consult her husband: Mr. Izen's billing statement shows that in early March 2008 he did an "initial interview" of Ms. Cooley and discussed IRS collection procedures with her.

A week later, Ms. Cooley personally wrote back and objected to the Commissioner's notice. She attached to the letter copies of the fronts and backs of five canceled checks from 2006 and early 2007.

This didn't stop the IRS bureaucracy. Shortly after Ms. Cooley sent her letter, the Commissioner sent her a final notice of intent to levy to collect her unpaid tax liability for 2006. Ms. Cooley timely asked for a collection due process (CDP) hearing to argue that she had timely paid her 2006 tax. Mr. Izen represented her and argued that she had made all estimated tax payments and that the checks she had submitted for review would show her 2006 liability was all paid up.

The Appeals officer reviewed the checks and found that they had been posted, but that IRS records still showed a balance due. She asked if there might be other checks Ms. Cooley had sent in that might have gone missing. She helpfully listed all the payments the IRS had applied to tax years 2005 and 2006:

| Date | Amount |
|------|--------|
| 6/18/2005 | $2,000 |
| 9/18/2005 | 2,500 |
| 1/23/2006 | 2,500 |
| 4/15/2006 | 2,000 |
| 4/20/2006 | 2,000 |

| 9/17/2006 | 2,000 |
|---|---|
| 6/20/2006 | 2,000 |
| 4/15/2007 | 500 |

She wrote that she suspected one of Ms. Cooley's 2006 checks had been posted as satisfying a 2005 liability that was still outstanding, triggering a shortfall in the payments of her 2006 tax. She attached to her letter a printout from IRS records of all the payments the IRS had received from Ms. Cooley between January 2005 and December 2007.

Here begins the story of the mystery check--number 6579--at the center of this motion. Check number 6579, for $2,000, was written by Ms. Cooley and sent to the IRS on April 15, 2005, as a quarterly estimated tax payment. Mr. Izen noticed that the list of checks that the Appeals officer had sent failed to include this mystery check. He rummaged through Ms. Cooley's records and shot a letter back to the Appeals officer with a copy of Ms. Cooley's April 14, 2005, quarterly payment voucher and the front (but mysteriously *not* the back) of check number 6579. The front of the check had a memo line, and on the memo line were the words "April 1/4 payment." The quarterly payment voucher Mr. Izen attached to his letter showed the key clue: Ms. Cooley had mistyped the second digit of her Social Security number.

Neither Mr. Izen nor the Appeals officer seems to have noticed this subtle, but important, flaw. The Appeals officer instead wrote back and said she thought "check number 6579 was applied to the tax year 2004." This, she said, resulted in an overpayment for 2004, which she thought the Service had refunded in 2005, which triggered an underpayment for Ms. Cooley's 2005 tax that was cured when the IRS took one of her 2006 payments and applied it to her 2005 liability, which triggered a shortfall of her 2006 payments. Her letter also included a list of payments that had been applied to tax year 2004:

| Date | Amount |
|------|--------|
| 4/16/2004 | $2,000 |
| 8/20/2004 | 2,000 |
| 1/21/2005 | 5,000 |
| 4/15/2005 | 2,000 |

Plausible detective work by the Appeals officer, but all just mistaken speculation as it turned out. She was convinced Ms. Cooley was still liable for the amount owed. Mr. Izen again promised to dig deeper into Ms. Cooley's records, down into the 2004 layer, and send what he found to the Appeals officer to refute her hunch about what had happened to the mystery check.

But Mr. Izen was at least beginning to focus on check number 6579--he sent a letter to the Appeals officer demanding proof that the IRS had applied check number 6579 to tax year 2004 and argued that if the IRS had done so, it had done so contrary to Ms. Cooley's direction.[1]  Mr. Izen also sent with his letter additional--albeit incomplete--information about Ms. Cooley's 2004 payments.  The information included copies of the fronts of three checks Ms. Cooley submitted to the IRS in 2004, along with a list showing a payment of $2,000 on April 15, 2005--check number 6578--with the words "2004 Extension" next to it.  This was the first time Mr. Izen hinted to the Appeals officer that there might be two checks, both for $2,000 and both dated April 15, 2005, but he did not provide a copy of either of them with his letter.

The Commissioner, however, was no longer listening.  On March 5, 2009, he sent Ms. Cooley a notice of determination sustaining the proposed levy.  In it, he concluded that all legal and procedural requirements had been met before the issuance of the notice of intent to levy.  He attached to the notice a discussion of the issues Ms. Cooley raised during the CDP hearing and concluded that she owed a

---

[1] A taxpayer making a voluntary payment can designate the liability she wants her payment to cover, and the IRS will apply the payment as the taxpayer directs. See Wood v. United States, 808 F.2d 411, 416 (5th Cir. 1987); see also Rev. Proc. 2002-26, sec. 3, 2002-1 C.B. 746, 746.

balance for 2006 because "check number 6579 was applied to the tax year 2004." This, the attachment said, resulted in a refund that became "the start of the shortages for the subsequent tax years." The attachment also included a list of payments, which purported to show the IRS had applied a payment dated April 15, 2005 to tax year 2004.

Ms. Cooley timely filed a petition contesting the Commissioner's determination. The case landed on our January 2010 Houston trial calendar. A month before trial, the Commissioner's lawyer held a discovery conference with Ms. Cooley and Mr. Izen.

It was only at this conference that Mr. Izen finally produced a copy of the backside of mystery check number 6579. It showed a nine-digit Social Security number, typed on the back of the check in accord with IRS custom. The number was not Ms. Cooley's. It was, however, the same nine-digit number that Ms. Cooley had entered on the payment voucher. It was also at this conference that Mr. Izen produced a copy of the other April 15, 2005 check--check number 6578--the one that Ms. Cooley had actually intended the IRS to apply to 2004.

The IRS lawyer wasted no time. She took the copy of check number 6579, checked IRS records, found the mistake in crediting the mystery check, and told Mr. Izen that the Commissioner would of course concede the case.

When we called this case at our January 2010 trial session, the Commissioner announced his concession and the parties' execution of a decision document. We withheld entering the decision, though, because Mr. Izen told us that Ms. Cooley would soon file a motion for administrative and litigation costs under section 7430 and Rule 231.[2]

She filed her motion, and then an amended motion, asking us to award her over $20,000 in attorney's fees, legal assistant's fees, and other costs[3] arising from the administrative and court proceedings in this case.[4] Accompanying Ms. Cooley's motion is a billing statement from Mr. Izen's firm dated February 10, 2010, just a few days before the motion itself. This statement describes the services provided to Ms. Cooley on each date, the number of hours spent performing those services, and the amounts allegedly charged. It shows the costs the Izen firm said Ms. Cooley

---

[2] All section references are to the Internal Revenue Code in effect at all relevant times, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.

[3] Specifically, her motion says she incurred $20,531.42 in total costs-- $19,470.60 of attorney's fees, $766.40 of legal assistant's fees, and $294.42 of other costs (for postage, faxing, copying, and filing fees).

[4] Ms. Cooley says her administrative costs are the costs she incurred up until the date the Commissioner issued the notice of determination, while her litigation costs are the costs incurred from the date of the notice of determination up until the date Mr. Izen finished preparing the amended motion for costs.

owed for postage, copying, faxing, and filing fees. And it shows that Ms. Cooley hadn't paid a cent towards the balance due.

Relying on the billing statement, Mr. Izen says that from the date of his "initial interview" with Ms. Cooley through the date he finished preparing the motion for costs he spent approximately 108 hours on her case, and charged her $180 per hour. He argues, however, that we should increase that rate up to $250 per hour due to the lack of experienced tax counsel in Harris County, Texas, willing to represent Ms. Cooley at $180 per hour.

Mr. Izen also claims that his legal assistant spent just under 10 hours at $80 per hour working on Ms. Cooley's case. He states in his declaration attached to Ms. Cooley's motion that the legal assistant working on her case was Scott McNeil. Several of the fax transmittal sheets accompanying letters Mr. Izen's office faxed to the Service, however, contain the message: "Thank you, Karen Cooley, Legal Assistant." Other than Mr. Izen's statement in his declaration attached to Ms. Cooley's motion, there's nothing to show that Mr. McNeil, and not Ms. Cooley, worked on Ms. Cooley's case.

The parties then settled down to barraging each other with paper: The Commissioner filed his objection to the motion, and Ms. Cooley filed a response to the Commissioner's objection. Since neither party said anything about the fact that

she had listed her spouse as "Joe A. Izen, Jr." on her return, their paperwork did not analyze the potential consequences of Ms. Cooley's marriage to her lawyer. The Court ordered up another couple rounds of briefing, and the motion is now ready for decision.[5] Neither party requested a hearing (and we conclude one isn't necessary), so we decide the motion based on the parties' filings and attached exhibits. See Rule 232(a)(2).

## Discussion

I.    Section 7430

Section 7430(a) allows us to award a prevailing party reasonable administrative and litigation costs. Reasonable costs include court costs and administrative fees imposed by the IRS, as well as "reasonable fees paid or incurred for the services of attorneys" in connection with the proceeding. Sec. 7430(c)(1) and (2).

But section 7430 has limits. We can award reasonable costs only if the taxpayer:

---

[5] Ms. Cooley seeks additional attorney's fees (i.e., fees on fees) of approximately $6,000 and $3,000 (the amounts requested in her reply to the Commissioner's objection and Mr. Izen's attached declaration don't match) for the hours Mr. Izen spent responding to the Commissioner's objection to Ms. Cooley's motion and researching and preparing a response to the Court's order. This brings the total costs Ms. Cooley claims she incurred to fight the Commissioner in this matter--even after he surrendered--to more than $30,000.

- is the prevailing party;

- has exhausted her administrative remedies within the IRS;[6] and

- did not unreasonably protract the proceedings.

See sec. 7430(a) and (b).  If a taxpayer fails to meet any one of these requirements, she gets no costs.  See Goettee v. Commissioner, 124 T.C. 286, 289 (2005), aff'd, 192 Fed. Appx. 212 (4th Cir. 2006).

A key question for us is whether Ms. Cooley is the "prevailing party."  This may seem odd at first glance--the Commissioner did concede the case--but section 7430(c) tells us that a taxpayer is the "prevailing party" in the arcane language of the Code only if:

- she substantially prevailed with respect to the amount in controversy or the most significant issue or set of issues;

- she meets the net worth requirements of 28 U.S.C. section 2412(d)(1)(A);[7] and

_____

[6] This is a requirement only when the party seeks an award of litigation costs. See sec. 7430(b)(1).

[7] The Equal Access to Justice Act (EAJA) provides for awards of fees and costs against the United States in cases other than tax cases.  See 28 U.S.C. sec. 2412(e) (2006).  Section 7430(c)(4)(A)(ii), however, incorporates by reference the net-worth requirements of the EAJA.  The EAJA, like section 7430, denies attorney's fees if "the court finds that the position of the United States was substantially justified."  28 U.S.C. sec. 2412(d)(1)(A).  The EAJA likewise allows the court to award the prevailing party only costs "incurred" in the proceedings.  28

(continued...)

- the Commissioner's position in the proceeding was not substantially justified.

See sec. 7430(c)(4)(A) and (B); see also sec. 301.7430-5(a), Proced. & Admin. Regs. The Commissioner bears the burden of proving that his position in the proceeding was substantially justified. Sec. 7430(c)(4)(B)(i); Rule 232(e).

The Commissioner makes a number of arguments why this $2,000 case shouldn't lead him to pay 15x that amount in costs. But we'll focus on two: that Ms. Cooley did not actually "pay or incur" those costs, and that the Commissioner's position in the case was substantially justified throughout because Mr. Izen and his wife didn't show him the back of check number 6579--and thus quickly solve the mystery--until the eve of trial.

## II. Paid or Incurred

Under section 7430(a), we can only award reasonable administrative and litigation costs that the taxpayer "incurred", and award only attorney's fees that the taxpayer "paid or incurred." Sec. 7430(c)(1)(B)(iii), (2)(B).[8] Since Ms. Cooley is the party claiming costs, she bears the burden of proving she incurred them. See

---

[7](...continued)
U.S.C. sec. 2412(a)(1).

[8] There is an exception to this limitation for *pro bono* legal services, see sec. 7430(c)(3)(B), but Ms. Cooley isn't arguing that the exception applies.

Thompson v. Commissioner, T.C. Memo. 1996-468, 1996 WL 594106, at *4; see also Rule 232(e) (moving party has to prove reasonableness of amount of costs).

Ms. Cooley doesn't dispute that she hasn't *paid* any of the costs she's claiming, but she does say she has *incurred* them. She points to her postnuptial agreement and the fact she has continued to file separate tax returns as evidence that she maintains a separate financial estate and can recover fees for Mr. Izen's services despite their marriage. She offers additional evidence in the form of her own affidavit, which states that when she incurs a business debt she pays her own bills and that she has agreed to pay and has in fact paid Mr. Izen for his services in other tax cases.

The Commissioner has the better argument here. We have held that the word "incurred" as it is used in section 7430 has its ordinary meaning, which is "'to become liable or subject to: bring down upon oneself.'" Grigoraci v. Commissioner, 122 T.C. 272, 277 (2004) (quoting Frisch v. Commissioner, 87 T.C. 838, 846 (1986)). Applying the ordinary meaning of the word means that a taxpayer can't incur costs under section 7430 unless the taxpayer has a legal obligation to pay them. See Grigoraci, 122 T.C. at 277-78; Vasquez v. Commissioner, T.C. Memo. 2007-6, 2007 WL 63742, at *20, aff'd, 284 Fed. Appx. 381 (9th Cir. 2008). Because the taxpayer must have a legal obligation to pay the costs, we have held

that "[t]he mere fact that a taxpayer retained counsel who in fact represented the taxpayer in a proceeding in this Court is not sufficient to meet this 'incurred' requirement of section 7430." Vasquez, 2007 WL 63742, at *21 (citing Grigoraci, 122 T.C. at 278-79); see also Thompson, 1996 WL 594106, at *5.

Ms. Cooley has shown us no evidence that she was legally obligated to pay her husband for his work on her case. There is no retainer agreement or other contractual arrangement with Mr. Izen making her legally obligated to pay him or his firm for services or other costs.[9] See Vasquez, 2007 WL 63742, at *21 ("[w]e are not willing to assume that petitioner and [her attorney] entered into an enforceable agreement"). Ms. Cooley also hasn't provided any evidence that Mr. Izen ever billed her for the claimed fees and expenses or that he ever planned to bill her for them. See Grigoraci, 122 T.C. at 278-79 (taxpayers cannot recover invoiced amounts they were never expected to pay); Swanson v. Commissioner, 106 T.C. 76,

_____

[9] There is evidence, as we've explained, that suggests some of the legal-assistant services Mr. Izen's firm billed Ms. Cooley for were actually services she performed herself. This would be a problem because we have held that a taxpayer does not incur costs for services she renders on her own behalf. See Frisch v. Commissioner, 87 T.C. 838, 846-47 (1986) (lawyer representing himself not entitled to fees for his services because didn't pay or incur them); see also Minahan v. Commissioner, 88 T.C. 516, 519 (1987). It is hard to believe that if Ms. Cooley was in fact the legal assistant working on her case Mr. Izen would have actually expected her to pay him $80 per hour for her own work.

101 (1996) (taxpayer cannot recover fees not billed). The single billing statement that we have is dated only days before Mr. Izen filed his motion. We find, as a result, that he prepared it solely for the purpose of the motion and that it does not reflect any obligation by Ms. Cooley to pay Mr. Izen $20,000 or $30,000 for this $2,000 dispute--an obligation we would be hardpressed without very persuasive evidence to think any but the unusually innumerate or incorrigibly stubborn would assume. See Vasquez, 2007 WL 63742, at *21. The fact that Ms. Cooley and Mr. Izen entered into a postnuptial agreement and that she says she has paid him for legal services in the past is just not enough to prove she has a legal obligation to pay him in *this* case.

Ms. Cooley points us to Bennett v. Smith, 2002 WL 169323 (N.D. Ill. Feb. 1, 2002). In Bennett, 2002 WL 169323, at *7, the court held that a prevailing civil-rights plaintiff could recover fees and expenses under title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e-5(k) (2006), for work performed by her attorney-husband. The court in Bennett noted that under the statute, civil-rights plaintiffs should ordinarily be able to recover attorney's fees unless special circumstances exist. Bennett, 2002 WL 169323, at *2. Since the plaintiff in Bennett had signed a retainer agreement just as any other client of her husband's would, and since her

husband had co-counsel to ensure he exercised independent judgment, the court found nothing to preclude an award in her case. Id.

There's nothing like that agreement and co-counsel arrangement here. And, in any event, Congress made section 7430 narrower than the fee-shifting provisions common in civil-rights law. Section 7430 requires costs to actually be "incurred" to be recoverable. Thompson, 1996 WL 594106, at *5. The statute at issue in Bennett is not so narrow: It provides that in a proceeding under the Civil Rights Act of 1964 the court may allow the prevailing party "a reasonable attorney's fee * * * as part of the costs." 42 U.S.C. sec. 2000e-5(k). It doesn't contain the same word "incurred." Bennett is therefore not a persuasive precedent for us here.[10]

We therefore find Ms. Cooley has failed to prove she paid or incurred the attorney's fees, legal assistant fees, and costs she claims in her motion.

---

[10] We are also especially leery of the fees for legal-assistant services. According to the Izen firm's billing statement these services consisted of preparing letters and documents for transmission, faxing, copying, and mailing--in other words, only clerical services. There's nothing to indicate that Mr. Izen's legal assistant performed services in a representative capacity. This means that even if Ms. Cooley had incurred legal-assistant fees, they are not the type of reasonable cost recoverable under section 7430. See Grigoraci, 122 T.C. at 279; see also sec. 301.7430-4(c)(2)(i), Proced. & Admin. Regs. (secretarial expenses typically not recoverable separate and apart from the representative's cost in an administrative proceeding).

III.    Substantially Justified

The Commissioner also argues that his position in these proceedings was substantially justified, which means Ms. Cooley isn't a prevailing party.  Positions shift during litigation, and surely shifted in this litigation, but there are rules to tell us when exactly to gauge what the Commissioner's position is to then decide whether it was substantially justified.  Those rules tell us to look to the Commissioner's "position" in the proceedings as of the separate dates he took positions--first in the administrative proceeding and then in the court proceeding.  Sec. 7430(c)(7)(A) and (B); Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 442 (1997).  In this case, the Commissioner first took a position in the administrative proceeding when Ms. Cooley received the notice of determination.  See sec. 7430(c)(7)(B) (position taken in administrative proceeding is the earlier of the date of the receipt by the taxpayer of the decision of the IRS Office of Appeals, or the date of the notice of deficiency); Dalton v. Commissioner, T.C. Memo. 2011-136, 2011 WL 2451177, at *4.  He first took a position in the court proceeding when he filed an answer to Ms. Cooley's petition.  See Corson v. Commissioner, 123 T.C. 202, 206 (2004); Maggie Mgmt., 108 T.C. at 442.

We often assess each position separately, but if the Commissioner maintains the same position in the notice of determination and his answer, we may consider

the Commissioner's administrative and litigation positions together. See Maggie Mgmt., 108 T.C. at 442-43; Dalton, 2011 WL 2451177, at *4. The Commissioner concedes here that the position he took in his answer is the same as the position he took in the notice of determination. That position was that Ms. Cooley had a balance due for 2006; specifically, he found that the total amounts of payments applied to tax years 2005 and 2006 were less than the total taxes owed for those years because check number 6579 was applied to 2004, which resulted in shortfalls in later years. We now know this was mistaken, but we need to figure out if it was "substantially justified."

A position is substantially justified if it has a reasonable basis in both fact and law and is justified to a degree that could satisfy a reasonable person. See Pierce v. Underwood, 487 U.S. 552, 565 (1988); see also Sher v. Commissioner, 89 T.C. 79, 84 (1987), aff'd, 861 F.2d 131 (5th Cir. 1988); sec. 301.7430-5(c)(1), Proced. & Admin. Regs. The reasonableness of the Commissioner's position turns on whether he knew or should have known, based on the available facts and circumstances and the legal precedents relating to the case, that his position was invalid when he adopted it. See Nalle v. Commissioner, 55 F.3d 189, 191 (5th Cir. 1995), aff'g T.C. Memo. 1994-182; see also Maggie Mgmt., 108 T.C. at 443. A significant factor in making this determination is whether the taxpayer presented all relevant information

under her control. Corson v. Commissioner, 123 T.C. at 206-07; sec. 301.7430-5(c)(1), Proced. & Admin. Regs.

Even if the Commissioner's position is incorrect, it may still be substantially justified "if a reasonable person could think it correct." Maggie Mgmt., 108 T.C. at 443. The fact that the Commissioner eventually concedes a case doesn't mean that his position wasn't substantially justified. Id. (citing Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991)). The Commissioner's concession, however, is a factor we can consider in making this determination. Id.

On this motion, the Commissioner argues his position was substantially justified because it had a reasonable basis in the facts and the law. The Commissioner is correct. Ms. Cooley's slow reveal of the backside of check number 6579 is a textbook example of not presenting all relevant information under her control. Ms. Cooley disagrees, arguing that she didn't withhold any relevant information and her failure to produce the back of check number 6579 doesn't matter because the Appeals officer determined that the Service applied check number 6579 to tax year 2004 without that information. That's true--but without the check, the Appeals officer was left to make the best guess she could for why a liability kept showing up in IRS records. Mr. Izen never pointed out the mistaken Social Security number on the payment voucher that Ms. Cooley did show the IRS

early on; but we can hardly fault the Appeals officer for not noticing it herself, and then reasoning that the same mistake must be visible on the back of a check that Mr. Izen hadn't given her.

The Commissioner is also correct in his argument that it was reasonable to think the IRS applied check number 6579 to a year other than 2005 because nothing on the face of the check precluded the Service from treating it as an undesignated voluntary payment and applying it as it saw fit.

Ms. Cooley argues in reply that the Service was required to apply check number 6579 as a 2005 estimated tax payment because she enclosed it with her 2005 estimated tax return, "which clearly identifies not only the 2005 tax year to which the enclosed payment must be applied but, also [her] proper social security number."

A taxpayer who makes a voluntary payment can direct how he or she wants the Commissioner to apply the payment, and the Commissioner must follow the taxpayer's designation. Wood v. United States, 808 F.2d 411, 416 (5th Cir. 1987); see also Rev. Proc. 2002-26, sec. 3, 2002-1 C.B. 746, 746. But if the taxpayer doesn't provide any direction, the IRS can apply the payment to any of the taxpayer's outstanding liabilities. Wood, 808 F.2d at 416. Revenue Procedure 2002-26, sec. 3.02, says that when the taxpayer does not provide specific written

directions with a voluntary payment of tax, "the Service will apply the payment to periods in the order of priority that the Service determines will serve its best interest. The payment will be applied to satisfy the liability for successive periods in descending order of priority until the payment is absorbed." See also Kohn v. Commissioner, T.C. Memo. 2009-117, aff'd, 377 Fed. Appx. 578 (8th Cir. 2010). All of Ms. Cooley's payments in this case were voluntary, so her designations, if any, will control.

When the Commissioner took his position in this case, Ms. Cooley had provided him with a copy of only the front of check number 6579 together with Mr. Izen's promise back in January 2009 to give the Appeals officer a copy of the actual check shortly. "Shortly" then turned into one month before trial. And it was only when the Commissioner received a copy of the front and back of the canceled check number 6579 that he was able to tell exactly what had happened using the data input on the back of that check. At that point he conceded Ms. Cooley didn't owe a balance for tax year 2006.

The record also shows that Ms. Cooley didn't provide a copy of check number 6578--her other payment dated April 15, 2005--until that time. Ms. Cooley even admitted in her petition that she had not provided proof of all of her payments for tax year 2004. The only hint of this other April 15, 2005 payment was on the

schedule that Mr. Izen attached to the letter which he sent shortly before the Commissioner issued the notice of determination.

With only this information, the Commissioner's position that the Service had applied check number 6579 to tax year 2004 was reasonable. The Service's own records showed that a payment dated April 15, 2005 had been applied to Ms. Cooley's 2004 tax year. Since the Commissioner had only a copy of the front of one check dated April 15, 2005 (and no copy of check number 6578), he concluded that check number 6579 was the April 15, 2005 payment applied to tax year 2004. Before he got a copy of the back of check number 6579, the Commissioner had no reasonable way of knowing his position wasn't correct.

The Commissioner could also reasonably conclude that Ms. Cooley had not specifically instructed the Service in writing how to apply check number 6579. The memo line on that check contained only the words "April 1/4 payment," but not the year she wanted the Service to apply the payment to or her Social Security number.[11] Ms. Cooley argues that she submitted check number 6579 with a 2005 Form 1040-ES, Estimated Tax for Individuals, but that alone doesn't seem to satisfy

---

[11] The checks she sent the IRS in 2006 also didn't contain the year she wished the Service to apply them to or her Social Security number, and the parties didn't present us with any evidence that Ms. Cooley submitted these 2006 checks with quarterly payment vouchers. The Appeals officer could therefore reasonably conclude that a 2006 quarterly payment had been applied to 2005.

Revenue Procedure 2002-26's requirement that the taxpayer specifically direct in writing how the Service should apply a payment.[12] The Commissioner was therefore reasonable in concluding that the Service could've applied check number 6579 to a tax year other than 2005.

We find the Commissioner's position--that Ms. Cooley had a balance due for tax year 2006--had a reasonable basis in both law and fact and was substantially justified.

It is true that a position that was reasonable when the Commissioner first took it can become unreasonable when circumstances change, as they did here at the pretrial meeting when Mr. Izen showed the Commissioner's lawyer a complete copy of the mystery check. See Dalton, 2011 WL 2451177, at *5. But that lawyer responded professionally and honorably by immediately checking IRS records and conceding the case.

---

[12] And the 2005 Form 1040-ES itself directs the taxpayer to "[w]rite your social security number and '2005 Form 1040-ES' on your check or money order."

Because we find that Ms. Cooley did not incur the costs she claims and that the Commissioner's position was substantially justified, we conclude she cannot recover the astonishing costs she requests. We need not address the parties' other arguments.

<u>An appropriate order and decision</u> <u>will be entered</u>.