T.C. Memo. 2018-10

UNITED STATES TAX COURT

DAVID L. BRUNER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13651-16.                    Filed January 30, 2018.

<u>Yale F. Goldberg</u>, <u>David R. Jojola</u>, and <u>Derek W. Kaczmarek</u>, for petitioner.

<u>Doreen Marie Susi</u>, <u>Rachael J. Zepeda</u>, <u>Rick V. Hosler</u>, and <u>Katelynn M. Winkler</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  This case is before the Court on petitioner's motion for award of litigation and administrative costs pursuant to section 7430 and Rule

[*2] 231.[1]  Neither party requested a hearing on this matter, and no material fact is in dispute.  We will therefore decide petitioner's motion on the basis of the parties' submissions and the existing record.  See Rule 232(a)(1).

We conclude that petitioner is not the "prevailing party" under section 7430(a) and (c)(4) because the position of the United States was "substantially justified" within the meaning of section 7430(c)(4)(B).  We will accordingly deny petitioner's motion for fees and costs.

## Background

The following facts are derived from the parties' pleadings and motion papers, including the declarations and the exhibits attached thereto.  Petitioner resided in Arizona when he filed his petition.

During 2011 and 2012, the relevant tax years, petitioner was a member of Circle Road Financial, LLC (Circle Road), a two-member LLC formed in 2004.  At all relevant times Circle Road has been treated as a partnership for Federal income tax purposes.  Circle Road's original operating agreement, dated Decem-

[1]Unless otherwise noted, all statutory references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[*3] ber 1, 2004, provided that each member had a 50% "participation percentage" and that profits, losses, and deductions would be allocated 50% to each member.

On January 1, 2006, Circle Road established a defined benefit plan under which it made contributions to retirement accounts set up for the members' benefit. Circle Road contributed to that plan $288,897 in 2011 and $650,454 in 2012 and claimed deductions for those contributions. On Schedules K-1, Partner's Share of Income, Deductions, Credits, etc., Circle Road allocated to petitioner approximately 92% of the 2011 contribution[2] (viz., $265,560) and 100% of the 2012 contribution (viz., $650,454). On his Forms 1040, U.S. Individual Income Tax Return, for 2011 and 2012, petitioner reported flow-through deductions of $265,560 for 2011 and $640,454 for 2012.[3]

The IRS selected Circle Road's and petitioner's 2011 and 2012 returns for examination. During its examination the IRS challenged Circle Road's allocation to petitioner of amounts exceeding 50% of the retirement plan contributions. Circle Road had amended its operating agreement five times between 2008 and 2012

---

[2]The balance of Circle Road's 2011 contribution was made on behalf of its other member, Eneas Kane, and that portion of the contribution was allocated to him.

[3]It is unclear why petitioner for 2012 reported a flow-through deduction of $640,454, or $10,000 less than the amount reported to him on the Schedule K-1.

**[\*4]** to make exceptions to the 50-50 allocation of certain partnership items. But none of these amendments addressed allocation of retirement plan contributions, and petitioner provided no documentation to substantiate that an amendment addressing this subject had been made.

On March 23, 2016, the IRS sent petitioner a notice of deficiency determining deficiencies of $46,473 for 2011 and $110,330 for 2012. These deficiencies reflected partial disallowance of flow-through deductions from Circle Road attributable to the retirement plan contributions. On the attached Form 886A, Explanation of Items, the IRS stated:

> Because your distributive share of the deductions for the contributions to the retirement plan sponsored by Circle Road Financial, LLC are limited to the amounts allowed in the operating agreement for Circle Road Financial, LLC, you are allowed deductions for the contributions to the Plan in the amounts of $132,780 and $325,227, for the taxable years 2011 and 2012, respectively. Therefore, your taxable income is increased by $132,780 and $315,227, for the taxable years 2011 and 2012, respectively.

For 2011 the IRS allowed petitioner a deduction for 50% of the amount that Circle Road had contributed and allocated to him ($265,560 ÷ 2 = $132,780). For 2012 the IRS allowed petitioner a deduction for 50% of the total amount that Circle Road had contributed and allocated to him ($650,454 ÷ 2 = $325,227). Be-

[*5] cause petitioner for 2012 had claimed a deduction of only $640,454, the adjustment to his income for that year was $315,227.

Petitioner timely petitioned this Court for redetermination. In his petition he alleged that Circle Road's members had modified the operating agreement to permit "a special allocation of the deduction at issue" and that their "established course of dealing and performance was to specially allocate" this deduction. On July 13, 2016, respondent filed his answer, denying for lack of substantiation petitioner's allegation that Circle Road's operating agreement had been modified in this way.

On December 6, 2016, petitioner provided to the IRS Appeals Office a declaration from Circle Road's other member, Eneas Kane. In that declaration Mr. Kane averred that Circle Road had specially allocated to petitioner "both the cost and accompanying deduction attributable to the pension benefit." He also averred that: (1) Circle Road's "special allocations were reflected in the respective member's capital accounts"; (2) he "agreed to the special allocations and the way they were made"; (3) the special allocations were "consistent with our economic sharing arrangements and * * * [the] operating agreement as modified"; and (4) Circle Road's "established course of dealing and performance was to specially allocate the pension deduction." The IRS Appeals Office accepted Mr. Kane's declaration

**[\*6]** as establishing that he and petitioner had orally modified Circle Road's operating agreement to allow a special allocation of the defined benefit plan contributions. On that basis, the parties began discussing a settlement of the underlying tax issues.

On April 10, 2017, respondent filed a motion for leave to file an amendment to answer, which we granted on May 1, 2017. In the amendment to answer respondent noted that petitioner's allowable deductions were subject to the "earned income" limitation in section 404(a)(8)(C). (That section provides in part that certain retirement plan contribution deductions are limited to the earned income an individual derives from the trade or business with respect to which the plan is established.) The parties subsequently agreed that this limitation does not apply for 2011 because petitioner's adjusted earned income ($520,053) exceeded the allocation to petitioner that the parties agree is proper ($265,560). The parties agree that this limitation does apply for 2012 because petitioner's adjusted earned income ($489,687) was lower than the allocation to petitioner upon which the parties have agreed ($640,454).

On May 15, 2017, the parties filed a stipulation of settled issues in which they agreed that: (1) petitioner's distributive share of the deduction attributable to Circle Road's retirement plan contributions is $265,560 for 2011 and $640,454 for

**[*7]** 2012; (2) petitioner is entitled to flow-through deductions of $265,560 for 2011 and $489,687 for 2012; (3) there is no deficiency for 2011; and (4) there is a deficiency of $52,769 for 2012.  This stipulation "resolve[d] all issues in this case other than petitioner's claim for litigation and administrative costs."  On June 14, 2017, petitioner filed a motion for reasonable litigation and administrative costs, and further briefing ensued.

## Discussion

### A.    Governing Statutory Framework

Section 7430 provides for the award of litigation and/or administrative costs to a taxpayer in a proceeding involving the determination of any tax, interest, or penalty.  Such an award may be made where the taxpayer can demonstrate that he: (1) is the "prevailing party"; (2) has exhausted administrative remedies within the IRS; (3) has not unreasonably protracted the proceeding; and (4) has claimed "reasonable" costs.  Sec. 7430(a), (b)(1), (3), (c)(1) and (2); Polz v. Commissioner, T.C. Memo. 2011-117; Nguyen v. Commissioner, T.C. Memo. 2003-313.  These requirements are conjunctive; failure to satisfy any one precludes an award of costs to the taxpayer.  See Minahan v. Commissioner, 88 T.C. 492, 497 (1987); Marten v. Commissioner, T.C. Memo. 2000-186.  Respondent concedes that the

**[*8]** second, third, and fourth requirements are satisfied here. Thus, the only question is whether petitioner is the "prevailing party."

To be the "prevailing party," a taxpayer must satisfy a net worth requirement. Section 7430(c)(4)(A)(ii) provides, with refinements inapposite here, that a taxpayer cannot be a "prevailing party" unless he is a "party" within the meaning of 28 U.S.C. sec. 2412(d)(2)(B). That section provides in pertinent part as follows:

> "[P]arty" means (i) an individual whose net worth did not exceed $2,000,000 * * * , or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees * * *

To be a "prevailing party," the taxpayer must also establish that he "substantially prevailed" with respect to either the amount in controversy or the most significant set of issues presented. Sec. 7430(c)(4)(A)(i). The taxpayer has the burden of proving satisfaction of both requirements. Rule 232(e).

B. Analysis

The parties initially dispute whether petitioner satisfies the net worth requirement. Petitioner concedes that his personal net worth has "exceed[ed] seven million dollars at all times relevant to seeking an award of costs in this matter."

**[*9]** Respondent contends that the $7 million net worth limitation in 28 U.S.C. sec. 2412(d)(2)(B)(ii) applies to petitioner as "an[] owner of an unincorporated business" and that he therefore cannot qualify as a "prevailing party" within the meaning of section 7430(c)(4)(A)(ii). See sec. 301.7430-5(g)(3)(ii), Proced. & Admin. Regs. Petitioner contends that the $7 million net worth limitation applies to the "unincorporated business" rather than its owner; that Circle Road had a net worth of less than $7 million and fewer than 500 employees at all relevant times; and that petitioner, as an owner of Circle Road, is thus a "party" as defined in 28 U.S.C. sec. 2412(d)(2)(B). Given our disposition, we need not decide this threshold question.

Assuming arguendo that petitioner could meet the net worth requirement, he would still not be the "prevailing party" unless he "substantially prevailed" with respect to the amount in controversy or the most significant set of issues present-ed. A taxpayer will not be treated as the prevailing party if "the position of the United States in the proceeding was substantially justified." Sec. 7430(c)(4)(B)(i).

The position of the United States is "substantially justified" if it is "justified to a degree that could satisfy a reasonable person" and has a "reasonable basis both in law and fact." Swanson v. Commissioner, 106 T.C. 76, 86 (1996) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)); see also Sher v. Commissioner,

**[\*10]** 861 F.2d 131, 134-135 (5th Cir. 1988), aff'g 89 T.C. 79 (1987); Powers v. Commissioner, 100 T.C. 457, 470 (1993), aff'd in part, rev'd in part, 43 F.3d 172 (5th Cir. 1995).  The determination of reasonableness is based on all the facts of the case and the available legal precedent.  Coastal Petrol. Refiners, Inc. v. Commissioner, 94 T.C. 685, 688, 694-695 (1990).  Where a factual determination is required, the position of the United States is substantially justified until the taxpayer has provided substantiation sufficient to justify resolution of that factual issue in his favor.  Goertler v. Commissioner, T.C. Memo. 2003-136, 85 T.C.M. (CCH) 1297, 1299.

"The Commissioner's position may be substantially justified even if incorrect 'if a reasonable person could think it correct.'"  Fitzpatrick v. Commissioner, T.C. Memo. 2017-88, at \*5-\*6 (quoting Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 443 (1997)).  The fact that the IRS loses a case or makes a concession "does not by itself establish that the position taken is unreasonable" but is "a factor that may be considered."  Maggie Mgmt. Co., 108 T.C. at 443; see Wilfong v. United States, 991 F.2d 359, 364 (7th Cir. 1993); Sokol v. Commissioner, 92 T.C. 760, 767 (1989); Fitzpatrick, at \*6.

Where a taxpayer seeks both litigation and administrative costs, we apply the "substantially justified" standard to the IRS' position on two separate dates.

[*11] For purposes of the administrative proceeding, the IRS' position is that taken at the earlier of: (1) the date the taxpayer receives the determination of the IRS Appeals Office or (2) the date of the notice of deficiency. Sec. 7430(c)(7)(B). For purposes of a Tax Court proceeding, the IRS' position generally is that taken at the time the Commissioner files his answer. E.g., Sher, 861 F.2d at 134-135.

Respondent maintained the same position in the notice of deficiency and in his answer to the petition, viz., that petitioner was not entitled to claim flow-through deductions for amounts exceeding 50% of Circle Road's defined benefit plan contributions. We accordingly evaluate those positions together. See Huffman v. Commissioner, 978 F.2d 1139, 1144-1147 (9th Cir. 1992), aff'g in part, rev'g in part T.C. Memo. 1991-144; Maggie Mgmt. Co., 108 T.C. at 442; Cooley v. Commissioner, T.C. Memo. 2012-164.

The regulations provide that, for contributions to a defined benefit plan, a partner's distributive share of (i) contributions made on behalf of self-employed individuals and (ii) deductions for such contributions is determined in the same manner as his distributive share of partnership taxable income. Sec. 1.404(e)-1A(f), Income Tax Regs. Section 702(a) provides that a partner (or member of an LLC treated as a partnership) shall take into account his distributive share of the partnership's items of income and deductions. Section 704(a) provides that a part-

**[*12]** ner's distributive share generally shall be determined in accordance with the partnership agreement. Section 761(c) defines a partnership agreement to include "any modifications * * * made prior to, or at, the time prescribed by law for the filing of the partnership return for the taxable year * * * which are agreed to by all the partners, or which are adopted in such other manner as may be provided by the partnership agreement." Modifications to a partnership agreement generally may be made orally or in writing. Sec. 1.761-1(c), Income Tax Regs.

On the Form 886A, the IRS explained the adjustments in the notice of deficiency by stating that petitioner's deduction was "limited to the amounts allowed in the operating agreement for Circle Road." The operating agreement stated that petitioner had a 50% "participation percentage" and that all partnership taxable income and deductions, unless otherwise specified, were to be allocated in accordance with that participation percentage. The adjustments the IRS made, limiting petitioner's deduction to 50% of Circle Road's contributions, comport with its understanding that his deduction was limited to what was stated in the operating agreement.

On December 6, 2016, roughly five months after respondent filed his answer, counsel for petitioner provided to the IRS Appeals Office a declaration from Mr. Kane, the other member of Circle Road. In that declaration Mr. Kane averred

[*13] that he and petitioner had orally modified the operating agreement to author-ize a special allocation for retirement plan contributions and the flow-through deductions attributable thereto. Although petitioner had previously provided the IRS with written amendments that modified the operating agreement in other respects, this was the first evidence petitioner had supplied of an oral amendment affecting retirement plan deductions.[4] After reviewing Mr. Kane's declaration, respondent agreed to concede the deficiency for 2011 and reduce the deficiency for 2012. We find this position to be reasonable in fact and in law.

Respondent properly made a partial concession of this case after petitioner supplied substantiation concerning the central factual issue in dispute. Before re-spondent received that substantiation, respondent's position--disallowing petition-er's flow-through deductions to the extent they exceeded 50% of Circle Road's contributions--had a "reasonable basis both in law and fact" and was "justified to a degree that could satisfy a reasonable person." Swanson, 106 T.C. at 86 (quoting

---

[4]During the examination the IRS had issued multiple document requests seeking copies of Circle Road's organizational documents, including all "amend-ments, modifications, supplemental agreements, bylaws, side letters, and all other agreements" and "an explanation for all special allocation of the Schedule K items to the respective members." One document request specifically sought informa-tion "[t]o determine whether the special allocation of the income and loss items on Schedule K are appropriate under § 704(b)." Petitioner provided the IRS with Circle Road's original operating agreement and the five written amendments but no evidence of any oral amendments.

**[\*14]** <u>Underwood</u>, 487 U.S. at 565); <u>Rosario v. Commissioner</u>, T.C. Memo. 2002-247, 84 T.C.M. (CCH) 392, 393.  Because the position of the United States was "substantially justified" under section 7430(c)(4)(B)(i), petitioner was not a "prevailing party" and thus is not entitled to an award of fees or costs.  <u>See</u> sec. 7430(a), (c)(4).[5]

To implement the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered</u>.

---

[5]Petitioner cites various documents generated during the 2011 and 2012 audits, including notices of proposed adjustment (NOPAs) issued to Circle Road, to support his contention that the IRS was pursuing various legal theories, including theories based on section 404.  But the theory on which the IRS ultimately settled was that the operating agreement capped petitioner's deductions at 50% of Circle Road's defined benefit plan contributions.  The amended NOPA issued to Circle Road stated that, because petitioner and Mr. Kane "each have a 50% profits share, the deductions in each tax year are allocated 50/50 to each partner."  And as explained in the text, the notice of deficiency--the key document in question--advanced that same position.